[L. A. No. 1456.   Department One.—January 13, 1906.]

G. A. BOTSFORD, Appellant, v. A. P. EYRAUD et al., Respondents.

ACTION TO QUIET TITLE — ADVERSE POSSESSION — STATUTE OF LIMITA- TIONS.—In an action to quiet title to a block of land, where it appears that the predecessors of defendant had taken possession thereof under a written instrument nine years before the commence- ment of the action and had inclosed it with other property held by them with a substantial fence, and that acts of ownership had been exercised over the land by grantees claiming under them, and that defendants are the possessors of lots in the block having houses thereon, and that all taxes had been paid by defendants and their predecessors during the whole period, without interruption of pos- session by plaintiff prior to the suit, the court properly held that the action was barred by the statute of limitations.

ID.—POSSESSION UNDER CLAIM OF TITLE — LARGE INCLOSURE. — Where possession is taken under a claim of title founded upon a written instrument, it is not necessary to make it adverse that a substantial inclosure protecting it should be separately confined to the entire land granted, but the land may be contained in a large inclosure with other lands held by the claimants under claim of title.

ID.—GRANT OF BLOCK—CONTINUANCE OF LARGE INCLOSURE—POSSESSION OF GRANTORS AS AGENTS OF GRANTEE.—Where after four years' possession, under such large inclosure by the original occupants under claim of title the block granted by the written instrument was deeded to a grantee, and such large inclosure was allowed to

continue for another year without further acts of possession by the grantee, there was no interruption of the adverse possession, but the continuance of the large inclosure constituted a possession for the grantee by his grantors as his agents in respect of the block so deeded.

ID.—ACTS OF POSSESSION BY GRANTEE—PRESCRIPTIVE TITLE.—Where the grantee commenced work on and about the land, and opened a street on one side thereof, and cleared the land of its incumbent growth, leveled a ditch thereon, and constructed a house upon it, and exercised such acts of possession of the whole block for a period extending more than five years after the possession taken by his grantors, a title by prescription is sufficiently shown in him and his successors in interest.

APPEAL from a judgment of the Superior Court of Kern County and from an order denying a new trial. J. W. Mahon, Judge.

The facts are stated in the opinion of the court.

Charles G. Lamberson, for Appellant.

Houghton & Houghton, and E. J. Emmons, for Respondents.

ANGELLOTTI, J.—This is an action to quiet title. Defendants had judgment, and plaintiff appeals from such judgment and an order denying his motion for a new trial. The trial court found that plaintiff's cause of action is barred by the provisions of sections 318 and 319 of the Code of Civil Procedure. The only point made by appellant upon this appeal is that the evidence was insufficient to sustain these findings.

The property in controversy is a block of land in the city of Bakersfield, described as block 269, and formerly known as "Block 2 N. R. 5 E." Title thereto has been continuously claimed by defendants and their predecessors ever since April, 1882, under and by virtue of a written instrument executed at that time, purporting to convey the premises to Charles Lux. Lux conveyed a half-interest therein to Henry Miller. Miller and Lux, in the spring of 1883, inclosed the property, with other adjoining property held by them, constructing a substantial fence on the north, south, and west sides, which, with fences surrounding the remainder of the property held by them, entirely in-

closed and protected the property in controversy. Until
March 25, 1887, Miller and Lux continued to so hold posses-
sion of the property, claiming to own it as aforesaid. The
evidence warrants the inference that during all of said time
it was to some extent used for the cultivation of corn by a
Chinaman, under lease from Miller and Lux. On March
25, 1887, Miller and Lux, for the expressed consideration
of fifteen hundred dollars, executed a conveyance of this
block to one Seidt. Seidt refused to allow the property
to be further occupied by the Chinaman, and did not him-
self personally occupy it or do any work thereon for about
a year. During all of this time it continued to be inclosed,
with the other property of Miller and Lux, by the fence
already spoken of, but, so far as appears, was not used in any
way. According to the plan of the city, the block was
bounded on the east by O Street, which had never been
opened. In the spring of the year 1888 Seidt removed the
portions of the north and south fences that were on such
street, and thus opened the street on the east side of the
block. This left the east side of the block open, and he did
not construct any fence on the east line. At the same time,
however, he cleared some brush and trees from the land
and leveled up a ditch running across it. He then constructed
a dwelling-house on the block. The land, according to the
map of the city, is laid off in eight lots, and this house was
built on lot 4. Whether there was any map or plan showing
such lots prior to November, 1888, does not appear. In
November, 1888, he sold said lot 4 to defendant Smith, who
resided thereon until the year 1901, when the house was
destroyed by fire. The remainder of the property Seidt contin-
ued to use to the extent that town property purchased to hold
and sell as town lots is ordinarily used, until he sold the re-
mainder of the land in 1895. He grubbed out the block, cleared
off the brush and trees, did something in connection with keep-
ing up the fences, and had a man living on it for over a
year. His grantees and their successors continued to treat
the property in the same way, until finally several houses
were constructed by them on the land. There was never
any pretense of interference with such possession as was
had by defendants and their predecessors until in the fall
of 1901 this action was commenced. Defendants and their

CXLVIII Cal. —28

grantors have paid all taxes levied on said property ever since the year 1882. These facts fully warranted the trial court in holding that there was such an adverse possession of the land by defendants' predecessors for five years, commencing in the spring of 1883, as would bar plaintiff's action.

There can be no question that a sufficient adverse possession was initiated by Miller and Lux under a claim of title, founded on a written instrument, in the spring of 1883, and continued by them until March 25, 1887. Not only did the evidence warrant the trial court in holding that the block was cultivated and a crop of corn raised thereon every year by their tenant during the whole of said period (Code Civ. Proc., sec. 323, subd. 1), but it was also during the whole of said time protected by a substantial inclosure. (Subdivision 2 of same section.) There is nothing in the point made by appellant that the particular land in controversy was not so protected, because it was not separately entirely inclosed by a fence, but was contained in an inclosure with other lands on the east also held by Miller and Lux under claim of title. There could be no good reason for requiring the claimant to subdivide the land claimed, and make subinclosures therein, and no such requirement is evidenced by the statute. The precise point appears to have been decided against the contention of appellant in *Hall* v. *Gittings*, 2 Har. & J. (Md.) 380, and was not involved in any of the cases cited by him. It is of course true that the adverse possession must be continuous for the full period of five years, and it is urged that the continuity was broken when Miller and Lux made the conveyance to Seidt on March 25, 1887, and Seidt did not for one year openly do any act indicating that he had taken physical possession of the land. It is said that by the mere making of such conveyance Miller and Lux entirely abandoned their possession, and that Seidt did not at once take possession, and that the running of the statute was therefore interrupted, and that it follows, under the well-settled rule as to the effect of an interruption of such possession, that the possession of the true owner constructively intervened and rendered all previous possession invalid. It must be borne in mind that during this year there was no visible abandonment of possession. The land in controversy continued to be protected with the lands on

the east still claimed by Miller and Lux, by a substantial inclosure. The notice as to an adverse claim to this land, and actual, open, and exclusive possession thereof by such adverse claimant, was the same in effect after as before the deed.

Under the facts of this case we are of the opinion that there was no interruption of the possession. The contention of plaintiff in this regard is based solely upon the execution of the deed by Miller and Lux to Seidt. There was not the slightest evidence of any intention on the part of Miller and Lux to abandon the actual possession held by them for four years, except in so far as their deed indicated their intention to yield that possession to their grantee for a valuable consideration. By such deed they simply transferred their claim of title and whatever right of possession they had to such grantee, and if actual possession of the land was not at once personally taken by Seidt under his deed, it continued to be held by Miller and Lux for him, and as his agents, for the land certainly continued to be openly and notoriously withheld from all others in the same manner that it had previously been withheld, and it is very clear that there was no intention on the part of Seidt to abandon the property he had purchased. No particular formality was necessary for the transfer of possession to Seidt or the taking of possession by him, and it was not essential to a continuance of the already inaugurated and maintained possession that he should at once personally go upon the land or perform any act of occupancy thereon. If his subsequent acts in regard to the property, taking into consideration the nature and condition of the property and the uses to which it was adapted, were such as to indicate a continuously existing intention to retain possession of the property, that fact, coupled with the fact of possession actually and notoriously withheld from all others except his grantors, is sufficient to show a continuance in him of the possession previously held under the claim of title by his grantors. There can be no question that, taking into consideration the nature and condition of this property, the uses to which it was adapted, and the purposes for which Seidt acquired it, the evidence warranted a conclusion that the subsequent conduct of Seidt was such as to show a continued existing intent to retain possession.

It is said in 1 Cyc., at page 1021, and the statement is amply sustained by authorities there cited: "Periods of vacancy incident to or occasioned by change of possession, or by the substitution of one tenant for another, and which are not of longer duration than is reasonable, in view of the character of the land and the uses to which it is adapted and devoted, do not constitute interruptions of possession, destroying its continuity in legal contemplation, when there is no intention to abandon the possession. They are but incidents of that continuous possession which the land, inherently, and in relation to the manner of its use, admits of. This rule proceeds upon the theory that notwithstanding such interruptions of actual occupancy, there is in fact no actual interruption of such acts of possession as the land is reasonably susceptible of."

There was ample evidence to warrant the court in holding that the adverse possession continued for the full period of five years. Whatever doubt there may be as to the precise time in the spring of 1888 when Seidt commenced doing work on and about the land, the evidence as to what was done by him in the way of opening O Street on the east side, clearing the land of its incumbent growth, leveling the ditch on the same and the construction of a house on a portion thereof, was sufficient to show, considering the nature of the property, a continuous adverse possession of the whole block, extending beyond the five years commencing with the "spring" of 1883.

The judgment and order are affirmed.

Shaw, J., and McFarland, J., concurred.