### G. G. WRIGHT ET AL. v. W. S. GILES.

Decided April 30, 1910.

**1.—Jurisdiction—Remand from Federal Court.**

After a cause has been remanded to a State Court from a Federal Court, the State Court has jurisdiction to try the same although a petition and bond *in due form* for removal had been filed in the first instance.

**2.—Lost Deed—Circumstantial Evidence—Degree of Proof—Presumption.**

The law only demands the best proof of a transaction that it is susceptible

of, and when that is produced, then it becomes a question whether or not its probative force is such as to establish the existence of the fact. After the lapse of forty-five years the same circumstantiality of proof is not required as in more recent transactions. The execution and contents of a lost deed may be proved by circumstantial evidence. It will be presumed from the record of an ancient deed that it was duly acknowledged. Circumstantial evidence considered and held sufficient to support a finding of the existence, execution and contents of a lost deed.

**3.—Appeal—Practice—Objection to Evidence.**

An objection to evidence not made on the trial will not be considered on appeal.

**4.—Tax Sale and Deed—Act of 1860.**

The Act of 1860 makes a tax deed executed in pursuance of a tax sale under said Act, prima facie evidence that both the power to sell existed and that all the prerequisites of the law had been complied with, and in the absence of evidence rebutting such prima facie case such deed will be held to rest in the grantee therein named a fee simple title to the land conveyed.

**5.—Trial—Order of Proceeding.**

It is within the discretion of a trial court to permit the introduction of evidence after the argument of a case has begun, and such discretion will not be revised in the absence of evidence that it was abused.

**6.—Ancient Deed—Proof of Consideration.**

An ancient deed admitted in evidence is proof of its execution and of the consideration paid therefor. The admission of improper parol testimony of said facts would therefore be harmless error.

**7.—Collection of Taxes—De Facto Government.**

The collection of taxes by the de facto government existing in the State of Texas from 1861 to 1865, and not shown to have been collected for the purpose of aiding the so-called rebellion, was necessary for the support of the State government, and therefore a sale of land to enforce the payment of said taxes was valid.

**8.—Constitutional Convention of 1866—Ordinance No. 11—Annulling Tax Sales —Invalid.**

Section 10 of ordinance 11 of the constitutional convention of 1866, attempting to annul tax sales of land made during the period from March, 1861, to August, 1865, even if not invalid because it was never ratified by the people, is invalid because it is repugnant to section 10, article 1, of the Federal Constitution in that it would impair the obligation of contracts, namely, the contracts of sale and purchase between the State and purchasers at tax sales prior to the adoption of said ordinance.

**9.—Deed—Estate in Futuro.**

A deed was in the ordinary form except that it stipulated that the land conveyed should remain in the possession of the grantor and the proceeds of said land were to be used by him for the purpose of defraying all expenses of said land and the support of himself and wife and children during their natural lifetime, and at their death said land was to become the property of the grantee therein named in fee simple. Held, valid under the provisions of art. 632, Rev. Stats., and a stranger to the deed could not complain of any construction which the beneficiaries therein named and the grantee might give to said deed or to the right of possession.

**10.—Trespass to Try Title—Common Source.**

Defendants in trespass to try title can not complain that the trial court, sitting without a jury, found as a conclusion of fact that said defendants claimed under a common source of title with the plaintiff, when throughout

the trial defendants endeavored to prove a common source of title; and this, though they failed in their effort.

**11.—Limitation—Possession under Contract to Purchase.**

The occupancy of one who enters into possession of a part of a larger tract of land under contract to purchase such part and to keep trespassers off the entire tract, will inure to the benefit of the vendor under a plea of limitation when the purchaser fails to consummate the purchase but pays rent annually to the vendor.

**12.—Estoppel—Limitation.**

A title by estoppel may be destroyed by adverse possession and title by limitation.

**13.—Trespass to Try Title—Prior Possession.**

One having prior actual possession of land is entitled to recover the same in trespass to try title as against a mere trespasser.

**14.—Tax Sale—Unknown Owners.**

A tax sale in 1862 against certain named parties and also against the unknown owners of the land, will divest title out of such unknown owners and vest it in the purchaser at such sale.

**15.—Trespass to Try Title—Outstanding Title.**

Where the parties to a suit of trespass to try title claim under a common source, the defendant can not prove an outstanding title with which he is not connected.

**16.—Practice—Notice of Appeal.**

Where a judgment is rendered against a number of defendants but only two give notice of appeal, the others can not complain of an error in the judgment although they are all joined in the appeal bond.

Appeal from the District Court of Wood County. Tried below before Hon. R. W. Simpson.

*Harris, Rouse & Britton* and *K. R. Craig,* for appellants.—The court erred by refusing the application of the defendant, Little Sandy Hunting & Fishing Club, for the removal of said cause to the United States Circuit Court for the Eastern District of Texas, and in assuming and exercising jurisdiction of said cause after said defendant had filed and presented its petition and bond for the removal of said cause in the manner prescribed by the statutes of the United States in such cases provided. Greene v. Klinger, 10 Fed., 689; Allin v. Robinson, First Dill., 119; Barney v. Latham, 103 U. S., 205; Calloway v. Ore Knob Copper Co., 74 N. C., 200; Cohens v. Virginia, 6 Wheat., 264; Rev. Stats., arts. 5252, 5253; Boone v. Hulsey, 71 Texas, 184, 185.

The trial court erred by admitting the testimony of I. C. Giles to the fact that he had seen on the records of Wood County, Texas, the record of the deed from the tax collector of Wood County, Texas, purporting to convey to B. M. Giles the land in controversy. And the court further erred by holding such testimony sufficient to establish the fact of the execution and delivery of the deed and of the existence of the facts necessary to have authorized the tax collector to execute said deed, as well as the identity of the land embraced in said deed with the land in controversy. Erskine v. Wilson, 20 Texas, 80; Rob-

inson v. Brinson, 20 Texas, 440; Hampshire v. Floyd, 39 Texas, 104, 105; 8 Ency. Evidence, 344, and note 3, citing and quoting Hamilton v. Swearingen, 1 Add. (Pa.), 48; Butler v. Dunagan, 19 Texas, 566; 4 Ency. Evidence, 206-209; 2 Ency. Evidence, 309-313, 343; Parks v. Dunkle, 3 Watts & S. (Pa.), 291.; Hewlitt v. Henderson, 9 Rob. (La.), 379.

The sale of the land for taxes in 1862, if in fact made, as contended for by plaintiffs and found by the court, was void, for the reason that such sale was made for the purpose of obtaining money for the support of a government organized for the purpose of waging war against the United States and at that time engaged in actual hostilities with the government of the United States. Texas v. White, 7 Wallace, 722, 724, 726-733; authorities cited, vol. 6, Rose's Notes U. S. S. C., reports in the case of Texas v. White, pages 1069 to 1070.

The sale of the land for taxes in 1862, if in fact made, was annulled and set aside by ordinance No. 11, sec. 10 of the Constitutional Convention of 1866. Waters v. Waters, 33 Texas, 51, 52; Maloney v. Roberts, 32 Texas, 139; Grigsby v. Peak, 57 Texas, 145, holding valid ordinance of Constitutional Convention of 1866. Lapse of time raises no presumption in favor of the regularity of a tax sale. Telfener v. Dillard, 70 Texas, 139.

The deed providing "that the above described land remain in the possession of the said B. M. Giles (grantor), and the proceeds of said land to be used by him for the defraying of all expenses of said land and support of himself and wife and children during their natural lifetime, and at their death said land is to become the property of said Wm. S. Giles in fee simple," deferred the vendees' right of possession until the death of the wife and all the other children of the grantor, B. M. Giles.

The reservation in said deed, considered in connection with the circumstances, namely, the character of the land as being incapable in its then condition of producing any revenue for the support of his family other than by the sale of timber therefrom, or such as remained after all the marketable timber had been cut off; the probable helpless condition in which the widow and children of B. M. Giles would be left by his death within the near future from the execution of said deed, should be construed as reserving to the widow full authority to sell and convey full title to said land, or so much thereof as might be necessary to provide for the support and maintenance of herself and minor children living with her.

The instrument was testamentary in character, and not effective as a deed. Orr v. O'Brien, 55 Texas, 158; Ferguson v. Ferguson, 27 Texas, 340-345; Carlton v. Cameron, 54 Texas, 72-77; McHugh v. Gallagher, 1 Texas Civ. App., 200, 201.

The court erred by not holding that the deed from Abigail Thompson to H. Munzenheimer operated by estoppel and acquiescence to vest in defendant, Little Sandy Hunting & Fishing Club, and John Berry, grantees by mesne conveyances, all the title or claim in the said land held by the widow and children of B. M. Giles, including W. S. Giles. Lewis v. Alexander, 51 Texas, 587; Burleson v. Burleson, 28 Texas, 416; Bigelow on Estoppel (4th ed.), 564, 565, 566, and

notes; Chapman v. Chapman, 59 Penn. St., 214; Nixen v. Belknap, 2 Johns, 573.

The court, having found as a fact that Jones' entry on the land was under a contract with Mrs. M. M. Giles made after the death of B. M. Giles, and that fact being also established by the undisputed testimony, and the court having also found as a conclusion of law that W. S. Giles' right of entry under the deed from B. M. Giles accrued at the death of B. M. Giles, it follows that the title by limitation acquired by Jones was adverse to plaintiff, inured to the benefit of Mrs. M. M. Giles, and was acquired by Munzenheimer by virtue of the estoppel of the deed from Abigail Thimpson.    Bombarger v. Morrow, 61 Texas, 417.

*Looney & Clark* and *M. D. Carlock,* for appellee.

RAINEY, CHIEF JUSTICE.—This is an action of trespass to try title, brought by B. M. Giles against G. G. Wright, John Berry, Tom Berry, C. F. Gordon, H. E. and W. E. Henry, and the Henry Lumber Company, to recover the James Hamblin survey of land patented to Robert W. Caldwell, as assignee, situated in Wood County, Texas, alleged to contain 1,065 acres. All the defendants except John Berry filed disclaimers, and set up that their acts of possession were under and through the Little Sandy Hunting & Fishing Club. Said club made itself a party, alleging that it was a private corporation under a charter from the State of Missouri, and claiming all of said land except thirty-four acres claimed by John Berry, which it disclaimed, and plead not guilty. John Berry claimed thirty-four acres of said land and disclaimed as to the balance.

The said club filed petition and bond for removal of the cause to the United States Court, which was granted, but the United States Court remanded same to the State Court, where the cause was tried by the district judge without a jury, and judgment rendered in favor of W. S. Giles upon his paying the sum of $200 into court for the benefit of the said club. From this judgment the Little Sandy Fishing & Hunting Club and John Berry only gave notice of appeal, but all the defendants filed an appeal bond.

The trial court filed its conclusions of facts as follows:

"Plaintiff, W. S. Giles, Addie Beckham, Lula Giles, R. L. Giles, R. P. Giles and J. D. Giles, are children of B. M. Giles—W. S. Giles by his first wife, who died prior to 1860; all the other plaintiffs are children by a second marriage of said B. M. Giles, which wife survived B. M. Giles, and died March 28, 1907, B. M. Giles having died January, 1881. J. C. Giles, a son by the first marriage and whole brother of W. S. Giles, is not a party to this suit.

"The land herein was patented to Robert W. Caldwell, as assignee of Jas. Hamblin, on May 31, 1855.

"The land in controversy was sold and deeded by the tax collector in Wood County, in 1861 or 1862, to B. M. Giles for delinquent taxes upon said land, which deed was recorded in the deed records in Wood County, Texas, prior to 1876. The deed records of Wood County were destroyed by fire December 11, 1878, and this deed was lost in 1867,

or thereabouts. In 1876 B. M. Giles and his son, W. S. Giles, had a tie contract for the T. & P. Ry. Co., and under the said tax deed entered upon said land, built tie camps and cut timber suitable to be made into ties for same. One O. J. Forceman, a tie-maker under B. M. and W. S. Giles, built a log house on the said land and lived in the same from about 1878 until about 1883. This was the most permanent of the structures built by the tie-makers. Forceman dug a well, cleared one or two acres of land, and cultivated the same for the years he occupied the house. At this improvement, as well as other cabins used by the tie-makers, were corrals for the teams that hauled the ties; this house was never occupied after Forceman and his family moved out.

"In 1881, a negro named Jones entered upon and took possession of 100 acres of this land, lying east of Little Sandy Creek, under a contract of purchase from Mrs. B. M. Giles; his title was never ripened into a perfect title. In 1882 John Berry, defendant, moved on this one hundred acres as Jones' tenant, and continued to occupy this land as his tenant until ——, when he repudiated the tenancy, and Jones sued him in trespass to try title for the 100 acres of land, which suit resulted in a judgment in favor of Jones against Berry in the District Court of Wood County on the ——, recovering the land, under which judgment a writ of possession was executed by the sheriff of Wood County, Texas, against said Berry.

"On April 12, 1878, B. M. Giles deeded all the James Hamblin survey here in controversy to W. S. Giles, said deed containing the following conditions: 'That the above described land remain in possession of the said B. M. Giles, and the proceeds of said land to be used by him for the defraying of all expenses of said land and support of himself and wife and children during their natural lifetime, and at their death said land to become the property of said W. S. Giles in fee simple.'

"Said deed was delivered by B. M. Giles to W. S. Giles, and duly recorded on April 19, 1878, in the deed records of Wood County, Texas, and again recorded May 2, 1907. On December 26, 1888, Abigail Thompson deeded to H. Munzenheimer the land in controversy, and it passed from H. Munzenheimer through mesne conveyances down to defendants herein, the Little Sandy Hunting & Fishing Club and John Berry. The defendants claim the land through B. M. Giles as common source.

"At the April term, 1906, of District Court of Wood County, Texas, the State of Texas recovered judgment against G. Munzenheimer, A. H. Seinsheimer and unknown owners of the land in controversy—delinquent taxes for the years 1898 and 1899—under which judgment there was regularly issued an order of sale on May 17, 1907, and said land was sold on July 2, 1907, by the sheriff of Wood County, Texas, to G. G. Wright, and deed duly executed.

"Neither plaintiffs nor defendants have held peaceable and adverse possession of the land in controversy and paying taxes on same for as much as five consecutive years, except as to the 100 acres lying east of Little Sandy Creek and particularly described in judgment of Jones v. Berry, hereinbefore referred to. Said Jones held same as the

agent of Mrs. B. M. Giles for more than ten years, peaceably and adversely, cultivating, using and enjoying the same.

"That J. C. Giles and Jeff Giles, acting with Mrs. B. M. Giles, on December 26, 1888, procured Abigail Thompson to execute the deed to H. Munzenheimer, and thereby deceived H. Munzenheimer into the belief that she owned the land.

"Abigail Thompson was a *feme sole* sister of Mrs. B. M. Giles, and lived with B. M. Giles years before his death, and lived with Mrs. B. M. Giles until her, Abigail Thompson's, death.

"Of the land in controversy, defendants herein have covered about three hundred and fifty acres with water and destroyed —— timber. This occurred after the deed from the sheriff under the tax judgment on July 2, 1907."

We adopt the trial court's findings of fact, except as may be hereinafter indicated in this opinion.

The first assignment of error presented is: "The court erred by refusing the application of the defendant, Little Sandy Hunting & Fishing Club, for the removal of said cause to the United States Circuit Court for the Eastern District of Texas, and in assuming and exercising jurisdiction of said cause after said defendant had filed and presented its petition and bond for the removal of said cause in the manner prescribed by the statutes of the United States in such cases provided." The cause was removed to the Federal Court on defendant's petition, but a motion to remand to the State courts was granted by the Federal Court, and the trial judge did not err in taking jurisdiction of and trying the cause.

The second assignment of error presented is: "The trial court erred by admitting the testimony of I. C. Giles to the fact that he had seen on the records of Wood County, Texas, the record of the deed from the tax collector of Wood County, Texas, purporting to convey to B. M. Giles the land in controversy. And the court further erred by holding such testimony sufficient to establish the fact of the execution and delivery of the deed and of the existence of the facts necessary to have authorized the tax collector to execute said deed, as well as the identity of the land embraced in said deed with the land in controversy."

Under this assignment is presented the following propositions:

1st. Without first having proved the execution, previous existence and loss of the instrument, no proof of its contents was admissible.

2d. Proof of the contents of the record was not admissible unless it had been first shown that the deed was properly acknowledged for registration.

3d. Plaintiffs and their ancestors, having failed to avail themselves of the statutory remedy for the substitution of destroyed records, should not be permitted to resort to secondary evidence of the contents of such record.

The testimony of I. C. Giles objected to is: "I knew something of the James Hamblin survey of land, located near Hawkins, in Wood County, Texas; I knew where the James Hamblin survey is located, and I know that along about the year 1862 my father bought the Hamblin survey along with a lot of other lands at tax sales. I did

have occasion to examine the deed records of Wood County, Texas, prior to the time the courthouse of Wood County was burned, about the time the Texas & Pacific Railway was building through Wood County; my father was living at Jefferson, Texas, and I was living near Quitman, in Wood County, Texas, and at that time my father wrote to me to go to the county records of Wood County and obtain a list of all the lands that he had purchased at the aforesaid tax sales. I went immediately to the records and obtained the desired list, and included in said list was the James Hamblin survey. I sent the list thus obtained to my father. . . . I found a deed from the tax collector of Wood County, to wit, William Doyle, who by virtue of his office had levied upon and advertised and sold the James Hamblin survey for delinquent taxes, my father being the purchaser and grantee named in said deed; I am almost sure—in fact, I know—that the sale of the Hamblin survey to my father, B. M. Giles, was made in 1862, which is also the date of the deed which I found of record when I examined the records as above stated; the tax deed from William Doyle to my father purported to convey the entire tract of 1,069 acres, located about seventeen or eighteen miles east of south of Quitman, and lying on the Sabine River and Little Sandy. I recollect these facts particularly because the T. & P. Ry. was building through or near this tract of land, and my attention was thus called specially to it."

W. S. Giles testified: "The only occasion that I have to know upon what my father's claim to that land (Hamblin survey) was predicated is that I know that he claimed it under a claim that he had purchased that land under a tax title deed. I do not know what became of that deed; that deed is supposed to have been lost. In 1867 we moved from Hunt County to Marion County, and after we got there all of the papers were lost and gone. All of the other papers, including this deed, were lost; all of his papers and all of his deeds were lost; he did not find anything. In making the trip from Hunt County to Marion County we run into a swollen stream right west of Daingerfield and came very near losing the wagon, and some parties with us, and so forth, and the papers were never found after that time. . . . With reference to the payment of taxes on that land, I knew that B. M. Giles paid all the back taxes that had accrued up to 1875, and he paid that in 1875 at one time, and from that time the taxes were paid regularly until 1880, and the property rendered as the property of B. M. Giles. In 1875 he paid in one lump all the taxes that had accrued, and from then on he paid the taxes until 1880 as they accrued. I do not know anything about the payment of taxes since 1880."

There are three James Hamblin surveys; the one in controversy is the only one patented and on which B. M. Giles and W. S. Giles, in January, 1876, established a camp for cutting ties, built temporary shanties and stockades for holding stock, and tie-cutters lived there. One plain log house was built and one of the tie-cutters went into it in 1877 or 1878, and lived there for two or three years. He dug a well, cleared up a patch and cultivated it. A negro by the name of Jones went upon the land under contract with Mrs. B. M. Giles to

buy one hundred acres, and to protect the whole tract from tres-
passers cutting timber, but he never bought, but remained on the land,
paying rent to Mrs. Giles from about 1883 until 1906. He built a
double-room log box house and a log house, cleared and cultivated
about twenty-five acres. The tax rolls of Wood County show that the
taxes were rendered and paid on said land by the Giles from 1878
down to and including 1889. The records of Wood County were de-
stroyed by fire in December, 1878. The land was known in the neigh-
borhood as the Giles land.

The testimony establishes the loss of the tax deed to B. M. Giles.
B. M. Giles claimed to own the land, took possession of it in 1876,
paid all the taxes during his life, and thereafter his widow held it by
tenant and paid taxes up to and including 1889.

The testimony of I. C. Giles, that he saw the deed on record in
Wood County, and as to its contents, we think admissible in connec-
tion with other circumstances, to prove its existence. That he could
not testify as to it being acknowledged does not render his testimony
inadmissible, as "it is to be presumed prima facie that the clerk did
his duty, and that the deed was so acknowledged as to properly admit
it to record." Crain v. Huntington, 81 Texas, 615. "The execution
and contents of a lost deed may be proved by circumstantial evi-
dence." Bounds v. Little, 75 Texas, 316. The deed was made in
1862, about forty-five years before this suit was brought. After so
long a time the law will not require the same circumstantiality of
proof as in cases where testimony of the precise transaction is sup-
posed to be accessible. Texas Land & Cattle Co. v. Walker, 47 Texas
Civ. App., 543 (105 S. W., 545). The law only demands the best
proof of a transaction that it is susceptible of, and when that is pro-
duced, then it becomes a question whether or not its probative force
is such as to establish its existence.

The third proposition to the admission of said testimony can not
be considered, even if tenable, as the bill of exceptions does not show
that such an objection was made to the admission of the testimony
on the trial.

Appellants contend that the tax deed to B. M. Giles should not be
considered because it was not shown that all the prerequisites to the
exercise of the power to make said sale by the tax collector had been
complied with. The Act of 1860, in force at the time the tax deed
was made to B. M. Giles, provides: "That the assessor and collector
shall, when any property has been sold for the payment of taxes, make
and execute a deed for said property to the person or persons pur-
chasing the same, which, when recorded according to law, shall be
prima facie evidence that all the requisites of the law have been com-
plied with in making such sale, and such deed shall also be prima
facie evidence that all the prerequisites to the exercise of the power
to make said sale have been complied with." Sayles' Early Laws of
Texas, art. 2868, p. 484.

There is a distinction between the power to sell and the regularity
of the sale. In construing deeds made to property at tax sales our
courts have uniformly recognized this distinction. Yenda v. Wheeler,
9 Texas, 408; Robson v. Osborn, 13 Texas, 297; Terrell v. Martin,

64 Texas, 121; Telfener v. Dillard, 70 Texas, 139. The Act of 1860, the law under which the tax deed in question was executed, makes the deed prima facie evidence that both the power to sell existed and that all the requisites of the law had been complied with. The cases just cited related to the discussion of deeds where the law only made them prima facie evidence that the requisites of the law had been complied with, and by analogy we hold that the tax deed to B. M. Giles vested in him a fee simple title to the land, there being no evidence to rebut the prima facie case made by the introduction of the deed.

The third assignment of error presented is: "The court erred by permitting plaintiffs to introduce evidence after argument had begun in the case and permitting plaintiff, W. S. Giles, to testify at such time to the consideration paid for and the delivery of the instrument executed by B. M. Giles to W. S. Giles. And the court further erred in that respect by holding such testimony sufficient proof of the delivery of said instrument."

It was within the discretion of the court to permit the testimony of the witness at the time stated, and we think such action was no abuse of its discretion. Rev. Stats., art. 1298. The testimony of said W. S. Giles, if not admissible, was harmless, as the deed in evidence was over thirty years old; it came from the proper custody, and was proof of its execution and consideration.

The fourth assignment of error is: "The court erred by holding in his conclusion of law that the tax deed, held by the court to have been established by the testimony of I. C. Giles, put the fee simple title to the land in controversy in B. M. Giles, and holding that plaintiff W. S. Giles, as grantee of B. M. Giles, was entitled to recover upon such title."

The proposition under this assignment is: "The sale of the land for taxes in 1862, if in fact made as contended for by plaintiffs and found by the court, was void for the reason that such sale was made for the purpose of obtaining money for the support of a government organized for the purpose of waging war against the United States and at that time engaged in actual hostilities with the government of the United States."

It is true Texas and other Southern States were, from 1861 to 1865, engaged in a so-called rebellion against the United States, in which the Southern States lost the cause for which they were contending, and the acts of said States done to further said cause have been declared void by the courts of the United States; yet there existed, in Texas at least, a *de facto* government, and all acts of said government not in furtherance of said cause were valid. The levy and collection of a tax were necessary for the running of said State government. It is not shown that said tax was levied and collected for the purpose of aiding the so-called rebellion.

In Texas v. White, 7 Wallace, 700, it is said: "All acts in furtherance of a rebellion—such as the acts being considered—are void, but all acts of a *de facto* government, such as those necessary to peace, good order, such as marital laws and those regulating domestic relations, governing the course of descent, the conveyance and transfer of property real and personal, and providing remedies for injuries to

persons and estates, and other similar acts which would be valid if emanating from a lawful government, must be regarded, in general, as valid when proceeding from an actual though unlawful government."

It would be difficult for a government to exist, "necessary to peace, good order," etc., without the power to enforce the collection of taxes for its support; hence we hold the sale of the said land for taxes was not invalid.

It is also contended that the sales of land for taxes made during the period from March, 1861, to August, 1865, were annulled by an ordinance of the Constitutional Convention of 1866. The ordinance of said convention, No 11, section 10, does, by its provisions, attempt to annul sales so made. Laws of Texas, 1866 (Gammel's), p. 898, section 10. It is contended by counsel for appellees that said ordinance, never having been voted upon or ratified by the people, it was never a part of the constitutional laws of this State. But if voted on and adopted by the people, because in conflict with section 10, article 1, of the Federal Constitution, in that it would impair the obligation of contracts, it is void.

There is no direct evidence in the record that said ordinance was ratified and adopted by the people. It appears that the ordinances of said convention are filed in the office of the Secretary of State, as well as a copy of the amended Constitution adopted by the convention of 1866, and a proclamation of J. W. Throckmorton, then governor, declaring the ratification of the amendments to said Constitution by the people of Texas, but there is no specific mention of the ordinances being adopted by the people. However, our Supreme Court, in construing said ordinance 11, has recognized section 6, relating to the running of limitation, as valid, and we are not inclined to a contrary view.

The other proposition of appellees, that said ordinance is repugnant to the Federal Constitution, we think is well taken. It attempts to annul a contract made between the State and B. M. Giles (as well as others), wherein the State, through its officer, conveyed to him a tract of land which vested in him the title to the land before the passage of said ordinance. Such right having vested in Giles, he could not be divested by the passage of such an ordinance and its adoption by the people. In other words, the State has no power to adopt a Constitution that would be binding when in conflict with the Constitution of the United States. That said ordinance is repugnant to article 1, section 10, we think beyond question; being so, it is void. Cooley's Con. Lim., 383; Ohio & M. R. R. Co. v. McClure, 10 Wallace (U. S.), 511; White v. Hart, 13 Wall. (U. S.), 646.

The fifth assignment of error is: "The court erred in holding that the instrument introduced in evidence, purporting to have been executed by B. M. Giles to W. S. Giles, passed the title to the land in controversy out of B. M. Giles and vested it in W. S. Giles, with the right of possession and use in B. M. Giles until his death, at which time the right of possession, as well as the title, vested in W. S. Giles."

Said deed was in the ordinary form, except it contained the following clause, to wit: "That the above described land remain in the

possession of the said B. M. Giles (grantor) and the proceeds of said land to be used by him for the defraying of all expenses of said land and support of himself and wife and children during their natural lifetime, and at their death said land is to become the property of said Wm. S. Giles in fee simple."

The deed was not testamentary in character, but comes within the purview of article 632, Rev. Stats., which reads: "An estate of freehold or inheritance may be made to commence *in futuro* by deed or conveyance in like manner as by will." Matthews v. Moses, 21 Texas Civ. App., 494 (52 S. W., 113); McLain v. Garrison, 39 Texas Civ. App., 431 (88 S. W., 485); Freeman v. Jones, 43 Texas Civ. App., 332 (94 S. W., 1072); Patterson v. Patterson, 27 S. W., 838; Garrison v. McLain, 112 S. W., 773.

If the said clause should be construed as deferring W. S. Giles' right of possession until the death of the wife and all the other children of the grantor, B. M. Giles, we think no injury resulted to appellants, as they are in no attitude to complain. The wife was dead; the other children joined W. S. Giles as plaintiffs in this suit and have not appealed from the judgment of the court, thereby acquiescing therein, and no injury results to the appellants, as the said children only have the right to complain of the ruling.

The appellants contend that the court erred in holding that they claimed title under a common source with plaintiffs. We are of the opinion that there was no error in this holding. The appellants introduced a deed from Abigail Thompson, and the evidence shows that they attempted throughout the trial to prove that B. M. Giles had conveyed the land to her, and that she was the owner of the same, but in this they failed, as no deed from B. M. Giles to her could be established. Abigail Thompson was a sister of Mrs. M. M. Giles, wife of B. M. Giles, and as to part of the Giles appellants showed an estoppel, but failed to show that appellee, W. S. Giles, was estopped by said conveyance of Abigail Thompson. On the issue of common source, we cite Burns v. Goff, 79 Texas, 236; Ogden v. Bosse, 86 Texas, 336; Simmons Hardware Co. v. Davis, 87 Texas, 146.

But if it should be conceded that the court erred in holding that appellants claimed through a common source, such holding is harmless, for under the evidence we are of the opinion that the Giles title, if defective, had ripened by the statute of ten years' limitation. B. M. Giles and son, W. S. Giles, took possession in 1876 and made improvements thereon. B. M. Giles died in 1881. The land was possessed by a tenant, who dug a well, occupied a house and cleared and cultivated a few acres, and held possession until a negro by the name of Jones took possession, built a house, cleared, fenced and put in cultivation twenty-five or thirty acres under a contract with Mrs. B. M. Giles to purchase one hundred acres, and also to keep trespassers off the land. Jones was to pay rent until the one hundred acres was paid for, but he never paid for it, but continued in possession, paying rent to Mrs. Giles. After Jones remained in possession for a few years he took the appellant Berry as a sub-tenant, Berry paying rent

to him and he to Mrs. Giles, including the year 1906. The possession was thus held until 1907, for a period of about thirty years.

It will be presumed that Mrs. M. M. Giles was claiming under the B. M. Giles tax deed, and such possession as she held through tenants will inure to the benefit of W. S. Giles. If Mrs. Giles was estopped by reason of the Abigail Thompson deed, she still held possession by tenants without recognizing the said Thompson deed, and her possession was adverse to appellants. The other Giles, who were parties to this action, did not appeal from the holding of the court, and are not complaining of the judgment awarding the land to W. S. Giles, and we think appellants are in no attitude to complain that W. S. Giles is not entitled to possession by reason of the terms of the B. M. Giles deed.

The appellee having actual possession of the land under a tax deed prior to the entry of the land by appellants, he showed at least a prima facie title that entitles him to recover in the absence of appellants showing a superior title in themselves, which they did not do. Duren v. Strong, 53 Texas, 379; Caplan v. Drew, 54 Texas, 493; Parker v. Ft. Worth & D. C. Ry. Co., 71 Texas, 133; House v. Reavis, 89 Texas, 626; Teagarden v. Patten, 48 Texas Civ. App., 571 (107 S. W., 909); Boyd v. Miller, 22 Texas Civ. App., 165 (54 S. W., 411). In the last two cases cited a writ of error was refused by the Supreme Court.

The claim of appellants that (1) title was outstanding in the heirs of Robert W. Caldwell can not prevail, as the tax deed to B. M. Giles was sufficient to divest title out of Caldwell and vest it in B. M. Giles; (2) the parties claiming under a common source, appellants can not show an outstanding title with which they can show no connection. Dycus v. Hart, 2 Texas Civ. App., 354 (21 S. W., 299); Teagarden v. Patten, supra; Cook v. Spencer, 91 S. W., 813.

The claim that the court erred in rendering judgment for costs against Wright, J. and T. Berry, Gordon, H. and W. Henry, and Henry Lumber Company, as they filed and disclaimed title, can not be considered, as they did not give notice of appeal in the trial court. Not having given notice of appeal, they are in no attitude to have the question reviewed by this court.

All assignments have been carefully considered, and we think, under all the facts, the proper judgment has been rendered, and it is affirmed.

*Affirmed.*

Writ of error refused.