[Civ. No. 4596. Second Appellate District, Division Two.—November 15, 1927.]

HENRY G. WEYSE et al., Appellants, v. HARVEY BIEDEBACH, Respondent.

Charles Lantz, Winslow P. Hyatt, Frederick C. Huber and Samuel M. Garroway for Appellants.

Fred W. Heath for Respondent.

CRAIG, Acting P. J.—It appears that on September 28, 1920, appellants filed the complaint upon which this suit is based, alleging that at all times from July 2, 1903, until March 1, 1913, the Antioak Leather Company was a corporation organized and existing under and by virtue of the laws of the state of California, and that on said last-mentioned date its charter was forfeited for nonpayment of the state license tax; that appellants were the directors

of said corporation, and upon such forfeiture they became trustees of the stockholders and creditors of said corporation, and entitled to the possession, management, and control of its property and assets. As such trustees appellants instituted this proceeding to quiet title to lots 1 to 39, inclusive, of the Hay Tract Addition to Nadeau Park, and adjoining property, in Los Angeles County, of which they alleged said corporation was the owner from December 29, 1904, until the forfeiture of its charter, and that the plaintiffs thereupon succeeded to, and had ever since been vested with, legal title to the real properties described in the complaint. They prayed that they as such trustees be adjudged to be the owners in fee and entitled to possession thereof as against the defendants, and that the latter be forever enjoined and debarred from asserting any claim to or lien upon any part of said premises adversely to the plaintiffs.

The defendant Biedebach, respondent herein, filed a separate answer, denying the formal allegations of the complaint for want of knowledge or information, and specifically denying directly that on March 1, 1913, the Antioak Leather Company was, or that the plaintiffs, as trustees or otherwise, had been the owners or entitled to possession of any of said real property; affirmatively alleging that the answering defendant claimed to own an estate in all of the property described in the complaint except in nine lots numbered 2, 8, 12, 24, 26, 31, 32, 33, and 34; that the plaintiffs and their predecessors in interest had been dispossessed and disseized of all of said property described in their pleading since on or about March 1, 1913; that their action was barred by section 318 of the Code of Civil Procedure, and that all of said property was deeded to the state of California more than five years prior to the institution of said proceeding.

Biedebach also filed and served a cross-complaint, wherein it was alleged that he and his predecessors in interest had for a period of more than five years prior to the commencement of this action been in open, notorious, exclusive, and adverse possession of all of the real property involved therein (except the nine lots above mentioned), and ''during all of said time have been occupying said premises and claiming same against the whole world, and has paid

all taxes levied and assessed against said premises during said time." By a second and separate cause of action, he alleged that he was the owner and in possession of said property; that his title was based upon certain tax deeds executed by the tax collector of Los Angeles County; that in pursuit of the title of the state of California, the cross-complainant and his predecessors in interest had paid for taxes, penalties, and costs, including redemptions, for a period of eleven years continuously from 1908 to and including the year 1919, the total sum of $4,506.46. The cross-complainant prayed that his title to the property so claimed be cleared as against the plaintiffs.

The parties waived a jury, and at the close of the trial before the superior court substantially all of the allegations of the plaintiffs were found to be true, except that more than five years prior to the commencement of this suit respondent Harvey Biedebach and his predecessors in interest entered upon and took possession of lots 1, 3, 4, 5, 6, 7, 22, and 23 of the property described in the pleadings; that he had been in the open, notorious, and exclusive possession thereof; that he claimed to own the same under written muniments of title against the world, and had paid all taxes levied and assessed against said lots for more than five years previously to the filing of the complaint; that the plaintiffs as trustees had not during the period of time last mentioned been seized or possessed thereof, but that with the exception of said eight lots the plaintiffs, as trustees, were the owners and entitled to possession of all the real property in suit. The court also found that prior to the tax sales, under which respondent claimed title, all of the property described in the complaint was inclosed by a substantial fence sufficient to turn and inclose livestock, that certain buildings had been erected on parts thereof, without due regard to lot line, which said fence and buildings had been maintained by the plaintiffs to the date of trial, except that the respondent "on April 10, 1921, and on several occasions subsequent thereto, made certain repairs upon said fence." It was further found that the ownership of Biedebach to said eight lots was based upon certain tax deeds executed by the tax collector during the years 1914 and 1919, for nonpayment of state and county taxes for the year 1908, and also upon a claim of title by

adverse possession under such written muniments; that each of said tax deeds was based upon an assessment-roll which had never been authenticated by affidavits of the county auditor; that respondent and his predecessors in interest had from time to time tenanted portions of all of the premises, and had collected rents aggregating the sum of $5,352, $3,859.26, of which he had collected from tenants of the plaintiffs' property; that the assessment of 1908 was void, but that the amounts so assessed were due the county of Los Angeles, except as to an exposition tax of three mills on each $100 valuation. The findings, conclusions of law, and decree respectively determined and required that the net rents collected by respondent upon appellants' portion of the premises exceeded the aggregate taxes, penalties, costs, and interest paid by respondent, which he should pay to appellants, or, that upon the failure of such payment, they have execution therefor.

This appeal is taken from those specific parts of the judgment, (1) excepting the eight lots numbered 1, 3, 4, 5, 6, 7, 22, and 23, from the decree in favor of plaintiffs; (2) declaring that by reason of the adverse possession of said lots respondent and his predecessors in interest, M. Dawson and A. W. Brode, Biedebach is the owner and entitled to possession thereof, and that his title be quieted as against all claims of appellants; (3) allowing respondent to deduct from the total rents, issues, and profits received by him the taxes, penalties, interest, and costs above mentioned, in the sum of $613.54, and withholding from appellants the rents, issues, and profits collected by respondent for the use of said eight lots; and (4) from an order denying the plaintiffs' motion to set aside the decree and to enter another and different decree ''in conformity with the findings of fact and plaintiffs' notice of intention to move for such order.''

Before entering into a discussion of the principal grounds upon which a reversal is sought, we pause to observe appellants' attack upon the sufficiency of respondent's answer. The complaint was in usual form, alleging ownership and right to possession of the real property described, that the defendants claimed some interest therein, and praying that the latter be required to set forth the nature of their claims. The answer denied the plaintiffs' owner-

ship and right to possession, and admitted that the defendant Biedebach claimed an interest in the property. It is contended that the answer was insufficient for the reason that it failed to set forth the nature of the defendant's claim, as demanded by the complaint. This question was squarely passed upon adversely to appellants in *Burris* v. *Kennedy*, 108 Cal. 331, 344 [41 Pac. 458], wherein it was said: "It is not a bill of discovery, and defendants are not required to state the nature of their claim for the benefit of the plaintiff, or simply to have it passed upon by the court." The same rule was announced in *Union Land Assn.* v. *Pacific Improvement Co.*, 139 Cal. 370 [72 Pac. 988].

It is insisted by appellants that there was no actual, continuous, uninterrupted adverse possession of any portion of the property, or dispossession of the plaintiffs, by respondent or his predecessors in interest, for any five-year period. It apparently is not respondent's contention that appellants were in the first instance ejected from or dispossessed of the premises, his assertion being that they abandoned them, and that respondent and his predecessors in interest paid all taxes and penalties levied and assessed thereon, and occupied them either in person or by tenant for a period of more than five years next preceding the institution of these proceedings; that tenants in possession were notified in writing to pay rent to respondent or to vacate, in at least one instance a tenant being one of the plaintiffs, and that such notices were promptly observed without question; that appellants removed machinery and other personal property therefrom, that the premises were inclosed by fences and buildings, and that as the fences or other structures required, they were repaired by the respondent or his vendors.

It affirmatively appears without contradiction that prior to the forfeiture of its corporate charter by the Antioak Leather Company, and during the year 1908, all taxes levied and assessed upon the realty described in the complaint were permitted to become delinquent, and that in July, 1914, or more than a year after such forfeiture, the property here involved was sold for taxes and penalties; that one Brode purchased lots numbered 7, 22, and 23, and one Dawson purchased lots numbered 1, 3, 4, 5, and 6 at

said sale. Respondent Biedebach was present and purchased lot 21, but this latter parcel was awarded to appellants by the trial court, and is not in controversy here. It also was testified, and not denied, that immediately following the sale each of the vendees entered the premises, took possession, and posted signs notifying the public in general that he was the owner of the property to which they were attached. Dawson testified that following his purchase he, together with his son, defendant Brode, and Biedebach went upon the lots which he had bought, measured them and thereafter occasionally repaired the fence, but that he appointed Brode as his agent to collect rents. Brode testified that he collected rents from such persons as were on the premises, or notified those who refused to pay rent that they must vacate, and that the latter complied with his demand in this respect; that he posted signs offering a reward of $50 for the conviction of any person removing or disturbing any of the property, and $25 for information leading to the arrest and conviction of anyone trespassing thereon; that he collected rents from appellant J. C. Hentzy, one of the former directors of the Antioak Leather Company and the trustee to whom it appears the others had delegated the management of their interests in whatever remained of the corporate property. It appears by the testimony of witnesses and exhibits in the record that Hentzy was absent much of the time, and that neither he nor any other representative of the defunct corporation pretended to occupy the property except as a place of storage for certain machinery and other personalty until they were ultimately sold and removed. True, he wrote an occasional letter to one J. C. Higgins, who wrecked and sold the machinery, requesting that he collect and forward "another month rent for me as I will be short," that he sell the boiler, etc., but there is documentary and other evidence strongly tending to show that neither the corporation nor its directors or trustees ever operated the plant, asserted any ownership in the property, other than as above recited, or paid any taxes after the year 1913. In fact, it does appear that they were without funds, and that they had no intention of occupying the premises, and that upon demand Hentzy paid rents to respondent Biedebach as heretofore stated.

Both Dawson and Brode conveyed their lots to the respondent Biedebach. The latter testified that he personally posted the notices already mentioned; that he leased a portion of the property to a Japanese, and other portions to one Coffman, California Vegetable Union, a Mr. Morino and others, respectively; that former tenants who had livestock or other personal property upon the premises were notified to pay specified rentals or to vacate, and that in some instances tenants vacated, while others paid rents to the witness; checks were introduced in evidence, and respondent testified that they were received by him from Hentzy as rent for the portion of the premises upon which machinery and other effects of the company were permitted to remain until disposed of. Brode, Dawson, Biedebach and others swore that at no time was anyone known to have occupied the premises, or to have offered any claim to or objection to the witnesses occupying, improving, or renting any portion of the property. Biedebach expended considerable amounts of money in re-roofing the Vegetable Union building, fumigating a cottage and repairing doors, windows, fences, plumbing, etc., and swore that none of the taxes remained unpaid at the time of the trial, except those assessed for 1920–1921.

It thus becomes apparent that the plaintiffs not only displayed no intention of occupying or repairing the premises in question, but paid no taxes thereon after 1913, while respondent and his predecessors following the tax sales exercised every right and performed every duty incidental to ownership, having purchased at sales for delinquent taxes and paid subsequent assessments, besides claiming under a color of title.

"Where, as in the present case, the tax has been allowed to become delinquent and a sale has taken place and, so far as appears, a redemption has been made thereof, while the party or his successor in interest was in undisturbed possession and all this is done in good faith, we see no reason why the same should not be held to operate as a payment, and we think it is sufficient to bring the occupant within the terms of the statute which requires him to pay the taxes upon the property claimed." (*Owsley* v. *Matson*, 156 Cal. 401, 405 [104 Pac. 983].) To the same effect is *Gray* v. *Walker*, 157 Cal. 381 [108 Pac. 278].

It is further objected by appellants that neither actual nor constructive possession by respondent and his predecessors in interest was shown, and that adverse possession was therefore not established, within the intent of section 321 et seq. of the Code of Civil Procedure. Authorities are cited by appellants which hold that adverse possession must be shown to have been actual, open, and not clandestine nor interrupted. It is argued therefrom that neither respondent nor his predecessors appear or claim to have been personally in occupation of the premises in suit, or to have continuously had their representatives or tenants in possession of appreciable portions thereof continuously; that "Actual possession means that possession which is accompanied by real and effective enjoyment of the property." (Citing *Lacoste* v. *Eastland*, 117. Cal. 673 [49 Pac. 1046].) And that "Interruption of adverse user, however slight, prevents acquisition of title by prescription." (Citing *Ball* v. *Kehl*, 95 Cal. 613 [30 Pac. 780].) Many other cases are cited to the same effect. As we have heretofore observed, however, besides the fact that the appellants, according to several witnesses, at no time indicated an intention of occupying the premises after the tax sales, and were not known to have displayed even an intention of interrupting the quiet occupation by respondent and his predecessors in interest, the latter made repairs, rented to various tenants, and collected the rents from all who used the property for any purpose, including the appellants themselves.

The rule is well established in California that the use and occupation requisite to adverse possession do not always require "constant" use (*Myers* v. *Berven*, 166 Cal. 484 [137 Pac. 260]). It is enough that the property be devoted to the ordinary use of the occupant, and temporary abandonments or periods of vacancy which evince no intention of abandonment of possession do not interrupt the possession. (*Montgomery & Mullen L. Co.* v. *Quimby*, 164 Cal. 250 [128 Pac. 402]; *Botsford* v. *Eyraud*, 148 Cal. 431 [83 Pac. 1008]; *Goodrich* v. *Mortimer*, 44 Cal. App. 576 [186 Pac. 844].) Furthermore, any visible act which clearly demonstrates an intention to claim ownership and possession, and either puts the legal owner upon inquiry or conveys actual notice, is sufficient. (*Franz* v. *Mendonca*, 131 Cal. 205 [63 Pac. 361].) It is not necessary that

one claiming by adverse possession be in personal occupation. Possession by tenant inures to his benefit. (*Lloyd v. Mills*, 68 W. Va. 241 [32 L. R. A. (N. S.) 702, 69 S. E. 1094]; *Sutton v. Whetstone*, 21 S. D. 341 [112 N. W. 850]; *Alabama State Land Co. v. Hogue*, 164 Ala. 657 [51 South 320]; *Wright v. Giles*, 60 Tex. Civ. App. 550 [129 S. W. 1163].)

Many authorities are cited by appellants which hold that a mere claim of ownership, accompanied by intermittent periods of occupancy, does not constitute a possession under color of title, without interruption, contemplated by the statute. It appears, however, that the respondent and his predecessors in interest personally visited the property in question at least once a month, and that although their tenants were not in possession of all the eight lots all of the time, yet portions of the whole were occupied by lessees from the time of redemption until suit was filed, and at no time did appellants interrupt by actual possession or demand therefor. In fact, as we have observed, they became tenants of respondent and paid rent to him; and to all intents and purposes vacated as soon as their personal property could be disposed of. It appears by correspondence in the record that Hentzy urged his agents to sell machinery and other personalty of the defunct corporation at as early date as possible.

It is next contended that Brode, one of respondent's vendors, did not retain in good faith the lots which he had purchased at the tax sale; that when Hentzy stated that the tax deeds were worthless Brode replied: "I told him it would take the Supreme Court to decide that, and that until they did decide that we would have to have some rent." This statement is assigned by appellants as an indication of doubt in Brode's mind as to his legal rights, but appellants fail to quote the entire answer of Brode in this respect, "and he made arrangements to pay me rent, and paid it to me as long as the tenants were there. . . . I kept some record of money received from Mr. Hentzy as rental for the premises I purchased at the tax sale. I have here all I was able to find. I think there is another check or two I might have found. Sometimes he would endorse the check he got, and sometimes he would give me one of his own. . . . I gave him a receipt for the payments

he made. I kept a carbon of the receipts. . . . I collected rents from Mr. Hentzy five or six months.''

Appellants argue that since there is no showing that Hentzy paid to Brode all of the rents which the former collected from tenants it should be assumed that both were equally in possession, and that payment of rent by Hentzy to Brode should not be permitted to estop appellants from claiming the legal title. We think from the facts already recited that this position is untenable. Brode purchased at the tax sale, and his deeds, whether valid or otherwise, constituted at least a color of title; tenants were notified to pay rents to him, and notices were prominently posted upon the premises, signed by Brode as owner; the tenants who may have occasionally and in a few instances paid rent to Hentzy could not be said to have altered the rights or status of either party, since Hentzy paid Brode whatever rents Brode demanded, and if he collected and retained moneys from certain tenants knowing as he did that Brode claimed the property by purchase, he is not justified under equitable principles in charging his admitted landlord with bad faith. *Franklin* v. *Merida,* 35 Cal. 558, 575 [95 Am. Dec. 129], cited by appellants, merely holds that one in possession of land who is induced by mistake, fraud, or misrepresentations to accept a lease from another may, upon discovery of the truth, go back of the lease and dispute the title of the fictitious landlord, and is not estopped to do so by the apparent relationship of landlord and tenant. Obviously that case is not here in point, except in so far as it approves the respondent's right to show that he was not in fact a tenant of appellants. They apparently abandoned the property, paid no taxes and made no effort to set aside the tax deeds; Brode did not lease from Hentzy, and the former collected rents, but was never requested to pay rent to either of the appellants. Hence, there is no pretense in the record that Brode or his successor in interest, Biedebach, was ever considered as appellants' tenant in any sense of the term.

Respondent alleged in his cross-complaint that in pursuit of the title of the state in and to said premises, he and his predecessors in interest had paid out and expended for taxes, penalties, and costs assessed and levied thereon,

including redemptions, for the years 1908 to 1919 the aggregate sum of $4,506.46, not including interest. The trial court found that the tax deeds, owing to errors in procedure at the time of sale, were void, but that the taxes, excepting the exposition tax of one mill on each $100 valuation, were justly due the county, and that respondent and his predecessors in interest had paid them. The eight lots heretofore mentioned, which it was found that respondent and his vendors had acquired by adverse possession, were adjudged to be the property of respondent, and all other properties described in the plaintiffs' complaint were awarded to the latter. As a condition to quieting the respondent's title to said eight lots, the judgment required that Biedebach pay to the plaintiffs or their attorneys, or deposit in court, the amount of rents, issues, and profits received by him from the portions of the property decreed to plaintiffs, to wit, the sum of $4,487.10 less the proportionate share of taxes paid thereon, and $543.40 expended in connection with repairs, expenses, and commissions, or $613.54. Appellants contend that due to a blending of several taxes the entire assessment of 1908 was void, and that taxes paid thereafter were not paid by Biedebach in pursuit of the state's title, but if paid at all were remitted to his predecessors in interest; that he bought from them the mere naked title, if any there was, and that having failed to plead it, he acquired no right to compel the appellants to reimburse him for any of the taxes so paid. Section 3898 of the Political Code provides, in part, as follows:

"Whenever in any action at law, it has been or shall be determined by a court that the sale and conveyance provided for in this and the preceding section or in section three thousand seven hundred seventy-one of this code heretofore or hereafter made are void for any reason, and that the purchaser from the state may not be finally awarded the property so purchased, no decree of the court shall be given declaring a forfeiture of the property until the former owner, *or other party in interest*, shall have repaid *to the purchaser* the full amount of taxes, penalties and costs paid out and expended by him, to be determined by the court, in pursuit of the state's title to the *property so sold.*"

Thus it would appear that the appellants or their successors in interest, if there were such, were required by statute to pay to the *purchaser* (that is, Biedebach's predecessor in interest as to each respective lot) the amount of taxes, penalties, and costs which had been expended in pursuit of the state's title. Appellants contend that such predecessor alone should be permitted to collect these refunds, and that they should not have been deducted from the rents, issues, and profits collected by Biedebach and his predecessors from the properties of appellants. Said predecessors, however, conveyed to respondent in each instance "All his estate, right, title, interest, property, possession, claim and demand whatever, as well in law as in equity in and to the property." In *Squires* v. *Estey*, 33 Cal. App. 287 [165 Pac. 34], it was held that regardless of the fact that defects and irregularities exist in an assessment which render a tax deed void and the taxes uncollectible by the state, still, the case would fall within the rule announced in *Holland* v. *Hotchkiss*, 162 Cal. 366 [L. R. A. 1915C, 492, 123 Pac. 258], that: "Where the owner comes into equity asking equitable relief to remove or cancel a tax deed or sale as a cloud upon his title, or to obtain a judgment which will in effect invalidate such sale or deed, the court shall refuse any relief except upon the condition that he first repay to the tax purchaser, *or his grantee or assignee*, the taxes, penalties, interest and costs justly chargeable upon the land and which the *purchaser* has paid at the sale, or afterward upon good faith of it, with legal interest from the time of such payment, less rents received, if any, if the purchaser has been in possession." We think the two cases last mentioned effectively foreclose appellants' right to withhold such taxes, penalties, costs, and interests, by whomsoever actually paid to the state, since the respondent alleged that he had expended the sums specified, and it would surely be inequitable to restore the property to appellants free and clear of all taxes assessed for several years. It is further complained that taxes paid subsequently to the tax sale were not paid "in pursuit of the state's title," and should be excluded, but this question also is answered by the authorities just quoted, which embrace taxes paid by one holding a tax deed "afterward

upon good faith of it, with legal interest from the time of such payment.''

As to the question of repairs, commissions, etc., expended in preservation of appellants' properties, these moneys also were paid out for the use and benefit of the owners, and we know of no rule requiring one to institute a separate suit for their recovery. Respondent was not a trespasser, but occupied the premises in good faith, under a deed from the state. It would scarcely be questioned that if compelled to relinquish the property which he repaired he would have a cause of action for his just expenses in that behalf.

It appears that the corporate owner of the real property taxed was at one time known as the Anti Oak Leather Mfg. Co., and that thereafter, through reorganization, it was named the Antioak Leather Co., but that all taxes were assessed in the name of the original company. Appellants argue, and cite authorities announcing the rule, that while under section 3628 of the Political Code a mistake in name will not invalidate an assessment, it is the duty of the assessor to assess personal property in the true name of the owner, else the assessment is void. (Citing *Lake County* v. *Sulphur Banks Q. S. M. Co.*, 66 Cal. 17, 20 [4 Pac. 876].) However, appellants' authorities in this regard are not applicable in the instant case. *Lake County* v. *Sulphur Banks Q. S. M. Co.*, and others of like character, were direct suits for the collection of taxes which were held to be invalid. As we have already observed, in a suit to quiet title the owner will be required in equity to refund taxes, penalties, costs, and interests, regardless of the fact that defects and irregularities in the assessments might render the taxes uncollectible by the state. (*Squires* v. *Estey, supra.*)

Appellants insist that although assessments were attempted to be levied upon specific parcels of land, the streets had been abandoned, and that there was no means of ingress to or egress from the property except by way of Slauson Avenue, from which it is said that the several lots or parcels could not be identified. It appears, however, that Center Street and First Street have been in use since 1905, the property was inclosed, and on the easterly side a gate was maintained; that following the tax sale the purchasers measured their properties for the purpose of

establishing their lines, and a chart of the Hay Tract Addition to Nadeau Park is embodied in the record, showing the various lots, with their boundaries. However, from what has been said as to the actual payment of taxes for the use and benefit of appellants, which in equity they must be held liable to refund regardless of the validity of the assessments, this point requires no further discussion.

As to the fourth and last ground urged for reversal wherein it is contended that the decree should have been set aside and another and different decree entered in "conformity with the findings of fact," appellants base their entire argument upon the points hereinbefore discussed. Their motion in the trial court stated that "there is a failure to find as a fact that the defendant Biedebach and his predecessors in interest have been in continuous, adverse possession of any of the property described in plaintiffs' amended complaint for more than five years immediately preceding the commencement of this action." The court did find that "the defendant Harvey Biedebach, and his predecessors in interest, entered upon lots 1, 3, 4, 5, 6, 7, 22 and 23 of the above described property, and for more than five (5) years prior to the filing of the complaint herein, have been, and said defendant has been, in the open, notorious and exclusive possession, claiming to own the same under written muniments of title, against the whole world, and has paid all taxes levied and assessed against the same for more than five years previous to the bringing of this action; . . . " From what has already been said, it is apparent that such finding comports with section 325 of the Code of Civil Procedure requiring that one claiming by adverse possession shall have paid the taxes for at least five years successively, and the decree based thereon recites that respondent "is held to be the owner of and entitled to the exclusive possession of said last-named lots, and that his title thereto be quieted. . . . "

No error prejudicial to appellants appearing, the order denying their motion to set aside said decree and the judgment are affirmed.

Thompson, J., and Collier, J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on December 15, 1927.