[Civ. No. 3450.  Third Appellate District.—June 2, 1928.]

JAMES D. PHELAN et al., Respondents, v. P. C. DRESCHER et al., Appellants.

William E. Kleinsorge for Appellants.

Bond & Deirup for Respondents.

PRESTON, J., *pro tem.*—Plaintiffs brought this action to quiet title to about twenty-four acres of land in Butte County, and to establish the dividing line between their lands and those of defendants. The defendants answered, asserting title by adverse possession to the land claimed by plaintiffs, and alleging that the dividing line between their lands is different than that claimed by plaintiffs. Defendants also allege in their answer that plaintiffs' claims are barred by the various provisions of the statute of limitations.

Judgment was rendered in favor of plaintiffs, from which judgment defendants prosecute this appeal.

The case was tried by the court sitting without a jury. The court found, among other things, that the true and correct dividing line between the lands of plaintiffs and defendants is as claimed by plaintiffs, and that plaintiffs owned the land in dispute, and it is north of this dividing line, and that defendants owned the land to the south of said line. The court further found in favor of the plaintiffs on the issues of adverse possession, agreed boundary, and the bar of the statute of limitations.

Appellants contend that these findings are not supported by the evidence.

The first question to be determined, therefore, is the sufficiency of the evidence to support the finding of the court that no agreed boundary line was ever established. There is no direct evidence that there was, or was not, such an agreement, and the question must be determined by the conduct of the respective owners of the lands, viewed in the light of the surrounding circumstances.

The sole purpose of this action was to determine the ownership of a triangular strip of land, containing about twenty-four acres, which plaintiffs claim lies within the south boundary of their land, and which defendants claim lies within the north boundary of their land. Prior to September 10, 1868, one D. M. Reavis owned more than ten thousand acres of land, lying on the east bank of the Sacramento River, in the county of Butte, and was known as the "Farwell Rancho." On September 10, 1868, D. M. Reavis conveyed a portion thereof, consisting of more than two thousand acres, to John W. Bowers, the predecessor in interest of the appellants. The land conveyed to Bowers was more or less covered with brush and oak trees; only a part of it being cultivated. In the year 1871 John W. Bowers constructed a fence along the north boundary of his land, and from the date of its acquisition by him, in 1868, until 1891, Bowers lived upon the land and farmed a portion thereof. During that period the Sacramento River at times overflowed its banks and some portions of the fence were washed away, particularly in the swales or low places. Immediately after the waters had subsided Reavis and Bowers would repair the fence and place it in its original position. During all the period from 1871 to 1891 Reavis owned the land on the north side of the fence and also north of the true line, and Bowers owned the land on the south side, and, as far as the record shows, at no time during that period was there ever any dispute or controversy of any kind between Bowers and Reavis regarding the fence or its location. The evidence shows that the land in dispute was brushy and in places covered with a heavy growth of trees, and in many places the fence was attached to the nearest tree in the course of the line of the fence, and at other places it was fastened to oak posts, many of which are still to be found in the present fence, although repairs have been made to the fence frequently from the date when it was first built until the commencement of this action, in May, 1925.

On October 1, 1891, the said John W. Bowers sold his land to John Crouch. In 1894 the lands of D. M. Reavis lying on the north side of the Bowers or Crouch land, and constituting the north half of the "Farwell Rancho," were sold under foreclosure, and by that sale the respondents

became the owners of the property of the said D. M. Reavis. The record does not reveal any dispute between Crouch and Reavis regarding the fence or its location. John Crouch farmed his land from 1891 until the 27th of April, 1905, and during that time the strip of land in controversy was cleared of brush and trees and cultivated by Crouch.

The witness Murphy, who had for some thirty-three years been the superintendent and resident manager of the lands of respondents, testified that in the year 1893 or 1894 John Crouch told him that when he (Crouch) bought the property there was a fence along the north boundary line, and the said Crouch cleared the property to the fence; that he grubbed and cut out the timber on the property to that fence line, and that the said Crouch agreed with him (Murphy) that the true line is as claimed by respondents and found by the court, and that said Crouch further stated "that he might sometime go ahead and fix the fence," but that nothing was ever done by either party. Murphy further testified that he took the matter up several times with respondents but they never did anything, and the said Crouch never did move the fence. Murphy further testified that at times thereafter the fence was repaired and that it was repaired by him and placed where it was originally, and at other times respondents furnished the material for the repairs and appellants did the work of repairing, and each time the fence was put back approximately where it had been originally.

John Crouch died before the time of the trial. On the 27th of April, 1905, said John Crouch conveyed the land to John Crouch Land Co., a corporation, which company cultivated and farmed said land until the 10th of February, 1912, when the said corporation conveyed the property to the appellants herein, who have ever since last-named date cultivated and farmed the entire property.

The witness Henry Bowers, son of John W. Bowers, testified that about 1871 he and his father built a fence along practically the same line as that occupied by the present fence; that the fence line was put upon high ground, wherever practical, for the purpose of avoiding the damage that would have been done to it by the overflow of the river.

The evidence also shows that the old fence followed the high land and, to strengthen it against overflow, was fast-

ened to trees when they appeared within a few feet of the line of the fence. In recent years the fence has been straightened out so as to run directly through certain swales, or lagoons, rather than around upon the high ground.

The facts necessary to be proven in order that a fence may become an agreed boundary line between two property owners has been the subject of consideration by the supreme court and also by this court on numerous occasions, and the decisions on the question are by no means harmonious. In the earlier cases decided by the supreme court, notably *Sneed* v. *Osborn*, 25 Cal. 619, the court said: "The authorities are abundant to the point that when the owners of adjoining lands have acquiesced for a considerable time in the location of a division line between their lands, although it may not be the true line according to the calls of their deeds, they are thereafter precluded from saying it is not the true line. The better opinion is that the considerable time mentioned in the cases must at least equal the length of time prescribed by the statute of limitations to bar a right of entry." (See, also, *Helm* v. *Wilson*, 76 Cal. 476 [18 Pac. 604]; *Truett* v. *Adams*, 66 Cal. 223 [5 Pac. 96]; *White* v. *Spreckels*, 75 Cal. 610 [17 Pac. 715]; *Wheatly* v. *San Pedro etc. R. R. Co.*, 169 Cal. 514 [147 Pac. 135]; *Columbet* v. *Pacheco*, 48 Cal. 397; *Loustalot* v. *McKeel*, 157 Cal. 642 [108 Pac. 707].)

Under this rule the facts in the case at bar would preclude respondents from saying that the old fence in question is not the true line dividing their lands and those of appellants. But under the recent decisions of both the supreme court and this court it has been held that the mere acquiescence in the existence of a fence and the occupancy of the land on either side of it does not amount to an agreement that it is an accepted boundary line. (See *Staniford* v. *Trombly*, 181 Cal. 372 [186 Pac. 599]; *Hill* v. *Schumacher*, 45 Cal. App. 362 [187 Pac. 437]; *Dauberman* v. *Grant*, 198 Cal. 586 [48 A. L. R. 1244, 246 Pac. 319]; *Wilder* v. *Nicolaus*, 50 Cal. App. 776 [195 Pac. 1068]; *Raney* v. *Merritt*, 73 Cal. App. 250 [238 Pac. 767]; *Cosgrave* v. *Donovan*, 52 Cal. App. 628 [199 Pac. 808, 810].)

These last-mentioned authorities hold that in order to establish an agreed boundary line the evidence must show more than mere acquiescence and occupancy for the

time prescribed by the statute of limitations; it must go further and show that the boundary line was uncertain, or believed by all parties to be uncertain, and that the conterminous owners agreed among themselves to fix and establish the dividing line, and that they actually did designate said agreed line upon the ground.

In *Clapp* v. *Churchill*, 164 Cal. 745 [130 Pac. 1062], the court said: "But the doctrine of an agreed boundary line and its binding effects upon the conterminous owners rests fundamentally upon the fact that there is, or is believed by all parties to be, an uncertainty as to the location of the true line. When that uncertainty exists, or is believed by them to exist, they may amongst themselves, by agreement, fix the boundary line, and that agreement will bind all the consenting parties. Acquiescence is merely evidence of the agreement, and can properly be considered as evidence of an agreement only when a formal agreement would itself have made a binding contract." (See, also, *Cosgrave* v. *Donovan, supra.*)

Therefore, we have this question squarely presented: Is acquiescence and occupancy of the disputed strip of land for fifty-four years, under the circumstances above stated, sufficient evidence to overthrow the finding of the trial court that there was no agreement that the fence should be the dividing line between the two properties? We think not. The fact that the true line was a part of the line cutting the "Farwell Rancho" of ten thousand acres into two parts; that it was marked by granite monuments; that it was a straight line, while the fence was irregular and built partly on high ground to avoid the swales and overflow of the Sacramento River; that John Crouch admitted to respondents' superintendent, Mr. Murphy, that the fence was not on the true line, and agreed to move it—are all circumstances against appellants' claim that there was an agreed boundary line. Whether these and other similar circumstances are sufficient to overcome the inference from long acquiescence and occupancy of an agreed boundary, under the other circumstances shown, involves the weighing of conflicting evidence, a function exclusively of the trial court, and is not a question of law within the province of a reviewing court. Under such a situation we are powerless to interfere with the findings of the trial court.

■ Appellants have no record title to the strip of land in dispute and have paid no taxes thereon. The court found there was no agreed line. Therefore appellants are in no position to claim the land by adverse possession, based upon the doctrine that where an agreed line varies from the true line a conveyance or payment of taxes according to the original description will be taken to extend to the agreed line and to cover the intervening land. (*Price* v. *DeReyes,* 161 Cal. 484 [119 Pac. 893] ; *Young* v. *Blakeman,* 153 Cal. 483 [95 Pac. 888] ; *Grants Pass Land Co.* v. *Brown,* 168 Cal. 456 [143 Pac. 754].)

■ Irrespective of the payment of taxes, and the question of an agreed boundary line, appellants contend that John W. Bowers, their predecessor in interest, held the strip of land in question adversely to D. M. Reavis, the true owner, from 1871 to May, 1878, and thereby gained title by adverse possession. The evidence is insufficient to sustain this contention. The payment of taxes was not a necessary element in gaining title by adverse possession under section 325 of the Code of Civil Procedure prior to the amendment of 1878. The burden is, however, upon appellants to show that all the requirements of section 325, of the Code of Civil Procedure, as it stood prior to 1871, were fully complied with in order to sustain their claim of adverse possession.

■ There are no equities in favor of one claiming title by adverse possession; he must prove all the necessary elements to establish adverse possession. (*Glower* v. *Alverez,* 10 Cal. App. 194 [101 Pac. 432] ; *Janke* v. *McMahon,* 21 Cal. App. 781 [133 Pac. 21].)

■ The appellants do not claim under a written instrument, judgment or decree; it was, therefore, incumbent upon them to show that the strip of land in question was either protected by a substantial inclosure or was cultivated or improved for a continuous period of five years immediately following 1871.

There is no evidence in the record that there was any fence to inclose the land conveyed to John W. Bowers other than the asserted boundary line fence on the north. Lands must be completely inclosed by fences, or, in proper cases, such fences may be combined with natural barriers. (*Goodwin* v. *McCabe,* 75 Cal. 584 [17 Pac. 705] ; *Baldwin* v.

*Durfee,* 116 Cal. 625 [48 Pac. 724]; *Nathan* v. *Dierssen,* 146 Cal. 63 [79 Pac. 739]; *Hibberd* v. *McCosker,* 55 Cal. App. 568 [203 Pac. 810]; *Botsford* v. *Eyraud,* 148 Cal. 431 [83 Pac. 1008].) The evidence also shows that the strip of land in question was not usually cultivated or improved; it never had any improvements on it. Before 1878 nearly the entire length of the strip was uncultivated. There was a portion of the tract purchased by Bowers which had trees, but no brush on it, and at some time or other Bowers cultivated this part of his land, but there is no evidence he ever did so before 1878. For these reasons alone appellants' claim of title by adverse possession must fail.

While appellants plead in their amended answer that plaintiffs' right to maintain this action is barred by sections 318 and 319 of the Code of Civil Procedure, no effort was made to sustain this contention. The defense of laches was not raised, either in the trial court or this court; neither was it pleaded.

Under the record presented we are not authorized to disturb the findings and judgment of the trial court.

The judgment is therefore affirmed.

Hart, Acting P. J., and Plummer, J., concurred.