[Civ. No. 5277. Third Appellate District.—May 27, 1935.]

LOUIS Z. JOHNSON et al., Respondents, v. W. A. BUCK et al., Appellants.

A. G. Ritter and Charles W. Hackler for Appellants.

Hazlett & Plummer and Robert J. Sullivan for Respondents.

PAULSEN, J., *pro tem.*—This action to quiet title involves a strip of land approximately 15 inches in width and 891.84 feet in length, and was brought for the purpose of determining the location of a boundary line. Defendants appeal from a judgment rendered in favor of plaintiffs.

Respondents are the owners of the south half of the north half of lot 30 of Arcadia Acreage Tract in the city of Arcadia, and appellants are the owners of the northerly 77.25 feet of the south half of the same lot. Santa Anita Avenue, which runs north and south, forms the west boundary of the lot. The boundary in dispute is the east and west line between the two holdings. For more than five years immediately preceding the commencement of the action a steel wire fence extended from Santa Anita Avenue eastward across said lot for a distance of about 135 feet. The east end of this fence is 757 feet from the east end of the lot, and part of the time

here involved there was no fence on this section of the line. However, there was testimony to the effect that a number of old survey stakes continued on the same course as the wire fence from its east end to the east end of the lot, and that for some time, as hereinafter stated, another fence had been erected between the same points. Respondents claim that the wire fence and the stakes were located on the true line, while appellants assert that they encroached 15 inches upon their property.

The court found that respondents were the owners of the south half of the north half of said lot, and that for more than five years preceding the commencement of the action the parties and their predecessors in interest had agreed that the wire fence and the line continuing it eastward should mark and forever determine the true boundary line between the properties. It further found that "for a period of more than five years prior to the filing of the complaint in the above entitled action, said fence had stood as erected, openly and with the knowledge and consent of defendants and their predecessors in interest"; that for the said time they had "paid all taxes duly and regularly assessed against said property and were in possession of, and lived upon said property during all of said time and improved said property, openly and with the knowledge of said defendants and their predecessors in interest". Appellants contend that these findings are not supported by the evidence.

Two surveyors, called by appellants, testified that this fence was located 15 inches south of the correct line, and the court appears to have accepted this as true. It is not seriously contended that there was a formal agreement, either written or oral, to accept the site of the fence as a boundary line. It seems to have been the theory of the trial court, and it is now the contention of respondents, that there was an implied agreement established by long-continued acquiescence or by estoppel. With this we cannot agree.

The wire fence was built while one Williams was the owner of the property now held by respondents. The record does not disclose how it came to be erected or under what circumstances its location was determined. In March, 1926, Williams conveyed the property to Teklar Floreen who owned it for six years. Floreen testified: "Q. And did you ever have any discussion with the people who lived on the prop-

erty just to the south of you, concerning that fence? A. Some few months after I moved in Mr. Buck spoke to me and said something like this—that the property line wasn't in the proper place and they should have a survey of some kind, and they thought that we were over on his side a little.'' He further testified that the matter was never discussed again. Floreen conveyed the property to respondents in March, 1932. Appellants maintained throughout the trial that they had at all times refused to recognize the site of the wire fence as the accepted or true boundary line, and there is no other evidence as to the conduct of appellants or as to their relations with respondents thereafter. It was shown that about April, 1926, Floreen had erected a fence connecting the east end of the wire fence with the east end of the lot, and had removed it again a few months before he sold to respondents in 1932. There was also evidence that a house was built somewhere on the property shortly before Floreen acquired it; that this was occupied by him and later by respondents. It does not appear, however, that any improvements were constructed on the strip of land in dispute, or that respondents or their predecessors in interest were misled in any way by the failure of appellants to protest against the location of the wire fence.

Respondents rely upon the cases of *Burris* v. *Fitch*, 76 Cal. 395, 398 [18 Pac. 864], *Columbet* v. *Pacheco*, 48 Cal. 395, and *Sneed* v. *Osborn*, 25 Cal. 619, as authority for the proposition that appellants' silence amounted to such acquiescence as to constitute an implied agreement to accept the fence site as the true boundary. These and other early decisions in this state undoubtedly lend some support to such contention, but more recent decisions have declared that mere acquiescence in the existence of a fence and occupancy of the land up to it do not amount to an agreement that it was on an accepted boundary line. (*Dauberman* v. *Grant*, 198 Cal. 586 [246 Pac. 319, 48 A. L. R. 1244]; *Staniford* v. *Trombly*, 181 Cal. 372 [186 Pac. 599]; *Phelan* v. *Drescher*, 92 Cal. App. 393 [268 Pac. 465]; *Ross* v. *Burkhard Investment Co.*, 90 Cal. App. 201 [265 Pac. 982].) In *Phelan* v. *Drescher, supra,* after reviewing both the early and late authorities, the court states: ''that in order to establish an agreed boundary line, the evidence must show more than mere acquiescence and occupancy for the time prescribed by the statute of limitations;

it must go further and show that the boundary line was uncertain, or believed by all parties to be uncertain, and that the coterminous owners agreed among themselves to fix and establish the dividing line, and that they actually did designate said agreed line upon the ground''. It is true that in *Raney* v. *Merritt*, 73 Cal. App. 244 [238 Pac. 767], and *Board of Trustees* v. *Miller*, 54 Cal. App. 102 [201 Pac. 952], there are expressions of the court which, if taken from the context and considered without reference to the facts of those cases, might lead to the conclusion that, in the absence of other evidence, acquiescence alone would be sufficient evidence of an implied agreement; but it is to be observed that in both of those cases there was evidence of uncertainty as to the true line, and there was also other conduct of the parties considered by the court. The real effect of those decisions is simply to declare again the well-established rule that acquiescence is evidence of an implied agreement, not that it alone can constitute sufficient proof of the fact. In *Hill* v. *Schumacher*, 45 Cal. App. 362 [187 Pac. 437], where the facts closely parallel those of the instant case, it was said: ''The existence of the fence alone must furnish the basis for the finding, if such a finding is to be made; for there is no evidence that the parties ever considered the fence to be the line; no evidence that it was built as such; no evidence that the lot of appellants was used up to the line, or that the strip in dispute was used by him at all, except in a purely nominal manner, growing out of the occupation of his lot by a residence building which only covered a portion of the lot and did not impinge upon the part thereof in dispute.'' The finding as to agreed boundary was held to be unsupported by the evidence.

There was no actual or believed uncertainty such as would permit a valid agreement in the present case. Floreen's testimony shows clearly that appellant Buck knew that the wire fence was south of the true line, and desired a survey to fix it. ''A formal agreement to fix a boundary line is not valid, indeed, is void, if the parties knew, or any one of them knew, that the agreed line is not the true line, or, in other words, if there be not an actual or believed uncertainty as to the true line.'' (*Clapp* v. *Churchill*, 164 Cal. 741 [130 Pac. 1061].) ''The boundary is considered definite and certain when by survey it can be made certain through the deed.''

(*Hill* v. *Schumacher, supra; Janke* v. *McMahon,* 21 Cal. App. 781 [133 Pac. 21].)

■ Appellants also argue that the evidence is insufficient to support the findings as to adverse possession. It was respondents' theory that there had been an agreement as to the boundary line; that the fence therefore determined the new line, and they held the strip in dispute under color of title. But as the finding as to such an agreement cannot be sustained, they can no longer claim the benefit of color of title. Their deed to the property did not include the disputed strip, and a deed is color of title only as to the land actually described by it. (*In re Wasson,* 54 Cal. App. 269 [201 Pac. 793] ; *Phelan* v. *Drescher, supra.*) ■ However, while the evidence is not as clear on this point as might be desired, it appears that the fence erected by Floreen, and the wire fence, existed for more than five years, and constituted an enclosure within the meaning of section 325 of the Code of Civil Procedure.

■ The finding as to payment of taxes depends for support upon the finding as to agreed boundary, and must fall with it. The evidence shows clearly that the taxes were paid upon the land described in respondents' deed, which did not include the strip in dispute, and in the absence of an agreement extending the boundary to include this strip, this does not constitute a payment of taxes on such strip. (*Staniford* v. *Trombly, supra; Phelan* v. *Drescher, supra; Board of Trustees* v. *Miller, supra.*)

■ Finally, respondents argue that appellants are estopped to deny the existence of the agreement, but we are unable to perceive any elements of estoppel in this case. In 1926, Buck stated that he did not recognize the site of the wire fence as the correct boundary line. His testimony and that of his witnesses was to the effect that he continued to protest thereafter, but respondents contend that he was entirely silent regarding the transaction. Having done nothing to establish the line, or agree to the location of the fence, appellants are not estopped to question it. (*Phelan* v. *Drescher, supra; Dibirt* v. *Bopp,* 4 Cal. App. (2d) 541 [41 Pac. (2d) 174].) In disposing of the same contention in *Staniford* v. *Trombly, supra,* the court said: "There was an absence of the essential elements of estoppel, namely, false statements or concealments, or conduct amounting to false statements

or concealments, with reference to the boundary made by one having knowledge, actual or virtual, of the facts, to one ignorant of the truth with the intention, resulting in consummation, that he should act upon such false statements or concealments or equivalent conduct.''

The judgment is reversed.

Thompson, J., and Pullen, P. J., concurred.