Filed 5/9/13  Degann v. Hunanyan CA2/2

## **NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JONATHAN DEGANN et al.,<br><br>Plaintiffs and Respondents,<br><br>v.<br><br>ANNA HUNANYAN et al.,<br><br>Defendants and Appellants. | B238685<br><br>(Los Angeles County<br>Super. Ct. No. LC082607) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Louis M. Meisinger, Judge.  Reversed and remanded with directions.

Law Offices of Wayne M. Abb and Wayne M. Abb for Defendants and Appellants.

Luna & Glushon and Robert L. Glushon for Plaintiffs and Respondents.

\* \* \* \* \* \*

Defendants and appellants Anna Hunanyan also known as Anna Hunanyan-Meguerian also known as Azniv Meguerian, and Lucy Meguerian appeal from a judgment quieting title to certain property in favor of plaintiffs and respondents Jonathan Degann and Tina Degann (the Deganns). Appellants and the Deganns are adjacent landowners, and the Deganns believed that the property they purchased included certain outdoor improvements. A survey revealed that part of the improved area included appellants' property. Following a bench trial, the trial court ruled that the Deganns had established all elements of adverse possession. It specifically ruled the Deganns' evidence that their property had been assessed on the basis of their purchase price, coupled with evidence that they considered their purchase price to include the visible improvements, was sufficient to demonstrate they had paid property taxes on that portion of appellants' property.

We reverse. To overcome the presumption that adjoining landowners pay property taxes only on the property described in their deeds, an adverse claimant may offer evidence to support an inference that the assessor instead assessed the property according to the land and improvements visibly possessed by each party. We hold that where there is no evidence that anyone from the assessor's office inspected the property or considered the visible improvements when making a tax assessment, a buyer's subjective opinion about the inclusion of those improvements as part of the property's purchase price is insufficient to support the inference a fair market value assessment accounted for those improvements. Alternatively, the Deganns failed to prove their adverse possession claim because they did not offer evidence of their tax payment via "certified records of the county tax collector" as required by Code of Civil Procedure section 325, subdivision (b).

## FACTUAL AND PROCEDURAL BACKGROUND

### The Dispute Between Adjacent Landowners.

Appellants own the property at 4536 Vanalden Avenue in Tarzana, and in 2001 the Deganns purchased the adjacent property at 4524 Vanalden Avenue. They paid $550,000 for the property, which they felt reflected its fair market value. At the time of

2

purchase, the property included a fenced patio area outside the master bedroom, containing improvements including a concrete patio, in-ground spa, landscaping and irrigation. The Deganns did not install any additional improvements to that area. They visually inspected the property at the time of purchase and would not have paid $550,000 for their property without the patio and spa area. Since the time of purchase, the Deganns paid each property tax bill for the property.

At some point, appellants sought to construct a significant addition to their home and undertook to have a survey prepared for the project. The survey revealed that an existing wall between the properties encroached approximately 10 feet onto appellants' property. During the summer of 2007, after the survey had been performed, the Deganns found a business card in their mailbox from appellants that contained a handwritten note stating: "We have a big problem. You are on our property." The Deganns then learned of the survey results. According to appellants, the parties unsuccessfully negotiated for the Deganns' purchase of the disputed property. Appellants also asked the Deganns if they would contribute to the demolition and reconstruction costs of a new wall on the property line. The Deganns retained counsel.

The parties exchanged correspondence about the disputed property during the next several months. Then, the Friday before Labor Day weekend in 2008, the Deganns came home to find that appellants had removed part of the block wall and fence between their properties. Despite the Deganns' protests, appellants continued to perform additional demolition the following week, but ceased after the Deganns obtained a temporary restraining order.

Thereafter, the Deganns obtained their own survey of the property and learned appellants had correctly claimed their property's boundary line was approximately 10 feet inside where the wall and fence had been. Relative to the Deganns' entire lot of 20,040 square feet, or .46 acres, approximately 678 square feet on the Deganns' side of the block wall was included in the legal description of appellants' property. Part of the legal lot line went through a patio area, some pilasters, portions of a wrought iron fence

3

and brick edging, but not the house or the spa; another part went through an undeveloped hillside area.

### *Pleadings, Trial and Judgment.*

In September 2008, the Deganns filed a complaint against appellants,[1] alleging causes of action for negligent and willful trespass and quiet title, and seeking a permanent injunction. After they obtained a temporary restraining order, the trial court issued a preliminary injunction on October 3, 2008, preventing further construction on the disputed property during the pendency of the lawsuit. The operative first amended complaint, filed in February 2009, alleged the same causes of action but included allegations concerning the Deganns' claim by adverse possession. Appellants answered and filed a cross-complaint for ejectment, trespass, quiet title and declaratory relief.

A bench trial commenced on September 13, 2011. A key issue at trial was whether the Deganns had satisfied the adverse possession element of payment of property taxes on the disputed property. Bruce Bagano, a supervising appraiser with the Los Angeles County Assessor's Office, testified about how the office assesses property for the purpose of computing property taxes. The goal is to establish a property's fair market value at the time of transfer, and the office applies a rebuttable presumption that a property's purchase price is the fair market value. In ascertaining fair market value, appraisers do not perform surveys and visually inspect a property only in an unusual case. On the basis of his review of the Assessor's office file for the Deganns' property, he opined that the $550,000 assessed value was based on the property's purchase price. He further opined that no survey was done and that it was highly unlikely that anyone from the Assessor's office had performed a visual inspection of the property. He explained that the Assessor's office has and takes into account a physical description of the property

---

[1] The original complaint named only Anna Hunyan, also known as Anna Hunyan-Meguerian (Meguerian). Lucy Meguerian was later added as a party; her name appears in the judgment and she is a party to the appeal. For simplicity, we generally refer to the two collectively as "appellants" throughout our discussion.

when ascertaining fair market value, but that description is not cross-checked against a survey.

Real estate expert Alan Wallace testified that it is not customary in the industry for a buyer and realtor to obtain a survey before the purchase of a single-family home. Instead, buyers typically rely on a visual inspection of the property and presume that existing walls and fences demarcate the property line. In a minority of transactions—such as when a property in a high-end neighborhood has a relatively low sales price—the Assessor's office would visually inspect the property. Wallace did not know when the Assessor's office stopped conducting visual inspections for all transactions. The current practice can occasionally result in boundary line problems—particularly with hillside properties. Moreover, realtors typically do not check to see whether improvements have been permitted, as the presumption is that the seller has accurately represented any improvements comply with the law. Wallace added that a property's purchase price, or fair market value, includes hardscape and landscape improvements.

In addition to experts, the Deganns and Meguerian testified. In connection with her testimony concerning her refusing the Deganns' offer to purchase the disputed property for $10,000, Meguerian—a realtor—opined that the area was worth more than $100,000. The trial court heard closing argument, during which time it asked multiple questions. Thereafter, notwithstanding that a statement of decision was neither required nor requested, the trial court offered its reasons for its ruling. Characterizing the payment of property taxes as the only issue in dispute, it found that the existing case law compelled the conclusion that the Deganns had paid property taxes on the disputed property for the requisite five-year period.

The trial court reasoned that the evidence showed there were significant improvements on the disputed property. Expressly according great weight to Meguerian's testimony that the disputed property was worth over $100,000, the trial court found that her testimony, taken together with the Deganns' testimony that they would not have purchased the home without the disputed property, showed that a meaningful portion of the property's purchase price was for the disputed property. On

5

the basis of expert testimony that a property's assessed or fair market value is typically the same as a property's purchase price, the trial court concluded: "[W]here the fair market value is the test and the appraiser does not do a visual inspection or a survey, the purchase price of land and improvements actually occupied by the parties is a proxy for fair market value, and therefore, assessed value, and therefore, taxes that are actually paid on the assessed value, i.e., the fair market value, means that the plaintiffs in this case paid taxes on the land and improvements that they actually occupied, regardless of the fact that the tax bills may actually refer to the correct legal description . . . which corresponds to the correct description in the deed." Summarizing, the trial court stated: "Since the assessor uses the purchase price of the property that was actually occupied by the parties who fully bargained for the price on that basis, this is equivalent functionally to a visual inspection or assessment by the assessor."

With respect to the Deganns' cause of action for trespass, the trial court found they had failed to satisfy their burden to establish damages. It further concluded that its ruling on the quiet title cause of action was dispositive of the cross-compliant.

The trial court entered judgment at the conclusion of trial and an amended judgment in November 2011, finding in favor of the Deganns on their third cause of action for quiet title, ruling that the Deganns "were, on September 8, 2008, the date of the commencement of the above-entitled action, and now are the owners in fee simple absolute, and in actual and peaceable possession of the real property" described in an attached legal description. The trial court found in favor of appellants on the Deganns' causes of action for trespass, and in favor of the Deganns on appellants' cross-complaint.

This appeal followed.

## DISCUSSION

Appellants contend the trial court misapplied the law in concluding that the Deganns satisfied the requisite elements of adverse possession—specifically, the element of the payment of property taxes on the disputed property. We agree in principle with appellants' position, though conclude that the deficiency is one of proof rather than application of law.

6

## I.    Standard of Review.

Consistent with their claim of error, appellants urge us to independently review the matter.  (See, e.g., *Souza v. Wetlands Water Dist.* (2006) 135 Cal.App.4th 879, 891 [if "the issue is presented to the court on the basis of undisputed facts and uncontroverted evidence and only a question of the application of the law to those facts need be answered, our review is de novo"].)  But in rendering its decision, the trial court expressly relied on one party's testimony concerning the value of the disputed property and disregarded other evidence on the point.  It also drew specific inferences from the evidence concerning the significance of the disputed property relative to the Deganns' purchase of the entire parcel.

Under these circumstances, we must review the trial court's determination for substantial evidence.  (*Axis Surplus Ins. Co. v. Glencoe Ins. Ltd.* (2012) 204 Cal.App.4th 1214, 1222.)  In resolving challenges to a verdict based on sufficiency of the evidence, we review the record as a whole, resolving all conflicts and indulging all legitimate and reasonable inferences in favor of the prevailing party, to determine whether substantial evidence supports the verdict.  (*Western State Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 571.)  Substantial evidence, however, is not synonymous with "any" evidence.  (*Kruse v. Bank of America* (1988) 202 Cal.App.3d 38, 51.)  To be substantial, the evidence supporting the judgment must be "of ponderable legal significance, . . . reasonable, credible and of solid value."  (*Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634, 651.)  "[I]t is ""'substantial' proof of the essentials which the law requires."'  [Citations.]"  (*Ibid*.)  "Inferences may constitute substantial evidence, but they must be the product of logic and reason.  Speculation or conjecture alone is not substantial evidence.  [Citation.]  The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record.  [Citation.]"  (*Buckley v. California Coastal Com.* (1998) 68 Cal.App.4th 178, 192.)

Moreover, while the determination of the trier of fact is entitled to great weight (*Fortman v. Hemco, Inc.* (1989) 211 Cal.App.3d 241, 259), substantial evidence "is . . . not merely an appellate incantation designed to conjure up an affirmance.  To the

contrary, it is essential to the integrity of the judicial process that a judgment be supported by evidence that is at least substantial." (*Roddenberry v. Roddenberry, supra,* 44 Cal.App.4th at p. 652.) Quoting former Chief Justice Traynor, the *Roddenberry* court elaborated that on occasion ""''an appellate court affirms the trier of fact on isolated evidence torn from the context of the whole record. Such a court leaps from an acceptable premise, that a trier of fact could reasonably [have believed] the isolated evidence, to the dubious conclusion that the trier of fact reasonably rejected everything that controverted the isolated evidence. Had the appellate court examined the whole record, it might have found that a reasonable trier of fact could not have made the finding in issue. One of the very purposes of review is to uncover just such irrational findings and thus preclude the risk of affirming a finding that should be disaffirmed as a matter of law." [Citation.]' [Citation.]" (*Ibid.*)

**II.     The Deganns' Evidence Was Insufficient to Satisfy the Requisite Elements of Adverse Possession.**

**A.      *Applicable Legal Principles.***

Under California law, to establish adverse possession, a claimant must allege and prove: "(1) possession under claim of right or color of title; (2) actual, open, and notorious occupation of the premises constituting reasonable notice to the true owner; (3) possession which is adverse and hostile to the true owner; (4) continuous possession for at least five years; and (5) payment of all taxes assessed against the property during the five-year period. [Citation.]" (*Mehdizadeh v. Mincer* (1996) 46 Cal.App.4th 1296, 1305; see also *Gilardi v. Hallam* (1981) 30 Cal.3d 317, 321 (*Gilardi*); Code Civ. Proc., § 325.) The doctrine of adverse possession is strictly construed, and the burden of proving all of the essential elements is on the party seeking to assert the right to title. (E.g., *Landini v. Day* (1968) 264 Cal.App.2d 278, 282 [claimant bears the burden of proving every element by "'clear and satisfactory evidence'"]; *Nelson v. Robinson* (1941) 47 Cal.App.2d 520, 528 [adverse possession cannot be established by inference "'but only by clear and positive proof'"].)

8

Since 1878, payment of taxes has been a "requisite condition to the acquisition of title by adverse possession." (*O'Hara v. O'Brien* (1895) 107 Cal. 309, 316.) Consequently, the failure to pay taxes on the land is fatal to a claim of adverse possession. (*Gilardi, supra,* 30 Cal.3d at pp. 326–327; *Raab v. Casper* (1975) 51 Cal.App.3d 866, 878.) The *Gilardi* court explained that "[o]rdinarily, when adjoining lots are assessed by lot number, the claimant to the disputed portion cannot establish adverse possession, because he cannot establish payment of taxes. [Citations.]" (*Gilardi, supra,* at p. 326; see also *Raab v. Casper, supra,* at p. 878 ["As a general rule, where adjoining lots are assessed merely by numbers and without reference to a survey, the claimant cannot establish adverse possession because he cannot establish payment of taxes"].) Applying the general rule, multiple cases have rejected claims of adverse possession. (E.g., *Friedman v. Southern California T. Co.* (1918) 179 Cal. 266, 271 [no adverse possession because "the defendant paid no taxes except those assessed upon the land described by its deed"]; *Pedersen v. Reynolds* (1939) 31 Cal.App.2d 18, 29 [no adverse possession of portion of adjoining parcel where "the holders of the deeds which actually contain within their descriptions the disputed strip of land, paid the taxes thereon"]; *Johnson v. Buck* (1935) 7 Cal.App.2d 197, 202 ["The evidence shows clearly that the taxes were paid upon the land described in respondents' deed, which did not include the strip in dispute, and in the absence of an agreement extending the boundary to include this strip, this does not constitute a payment of taxes on such strip"].)

Two exceptions exist to the ordinary rule that those whose taxes are assessed by lot number cannot establish the payment of taxes on a portion of another's lot. First, the claimant may show "that there is an error in the description on the assessment roll" to establish the error and his payment of taxes. (*Gilardi, supra,* 30 Cal.3d at p. 326.) For example, in *Sorensen v. Costa* (1948) 32 Cal.2d 453, for over 40 years adjacent landowners occupied and improved one-half of their own lot and one-half of the adjoining lot as described in the city's official map. Affirming a judgment quieting title to one-half of one of the lots, the appellate court found that the plaintiff met his burden to show the payment of taxes where the land was actually assessed as improved property

9

even though the description on the tax assessment roll was unimproved property.  (*Id*. at pp. 465–466.)  Under such circumstances, the plaintiff "proved by substantial evidence that the description on the tax assessment rolls was mistaken and that he and his predecessors not only thought that they were paying taxes on the land occupied but in fact paid taxes actually assessed against such lands."  (*Id*. at p. 466.)

The *Gilardi* court described a second exception:  "[W]here the claimant by construction of buildings or other valuable improvements or by the building of fences has visibly shown occupation of a disputed strip of land adjoining the boundary, several cases have reasoned that the 'natural inference' is that the assessor did not base the assessment on the record boundary but valued the land and improvements visibly possessed by the parties."  (*Gilardi, supra,* 30 Cal.3d at p. 327; accord, *Price v. De Reyes* (1911) 161 Cal. 484, 490 [where claimant had enclosed area including 18 inches of adjoining parcel, "the natural inference would be that the assessor put the value on the land and improvements of each party as disclosed by the visible possession, rather than that he ascertained the true line by a careful survey and assessed to one a part of the possessions of the other"]; *Drew v. Mumford* (1958) 160 Cal.App.2d 271, 277 [where fence had been constructed and reconstructed in an area enclosing 21 inches of adjoining parcel, court concluded "it would be possible to infer in support of the judgment in the instant case that taxes were assessed and paid on the basis of the property in the possession of the parties"].)

In *Gilardi, supra*, 30 Cal.3d 317, the court found the evidence insufficient to satisfy the second—or "natural inference"—exception.  There, a survey stake purporting to mark the property line between lot 1407, owned by the plaintiffs, and adjoining lot 1408, owned by the defendants, had been erroneously placed on a portion of lot 1407. (*Id.* at p. 320.)  Relying on the position of the stake, the defendants' predecessors had improved a portion of lot 1407 with a sidewalk, sprinkler system, trees, and a lawn. (*Ibid.*)  Lot 1408 was also improved with a house, while lot 1407 remained unimproved except for what the defendants' predecessors installed.  (*Id.* at p. 321.)  Finding that this evidence did not support the natural inference that taxes had been assessed on the improvements, the Supreme Court held the defendants failed to prove the requisite

10

adverse possession element of the payment of taxes on lot 1407: "The parties and their predecessors were assessed taxes by lot number. There is no direct evidence that the sidewalk or ornamental plantings were considered in the assessment of the lots. There are no physical barriers, structures, or enclosures indicating that plaintiffs and their predecessors were excluded from using the sidewalk and planted areas on their land, or that the improvements were not a joint undertaking of the landowners. In the circumstances, the trial court was not required to infer that the assessor concluded the sidewalk and plantings reflected ownership of the disputed land by defendants and their predecessors." (*Id.* at p. 327.)

> **B.** **The Deganns' Evidence Did Not Establish the Payment of Taxes on the Disputed Property.**

> **1.** **The evidence did not reasonably and logically support the inference that the Assessor visibly inspected and assessed the disputed property to the Deganns.**

Here, as is the typical case with adjoining landowners, the evidence showed that appellant and the Deganns paid property taxes on the land described in their deeds. (See, e.g., *Walner v. City of Turlock* (1964) 230 Cal.App.2d 399, 410 ["The record reflects that the land here involved was assessed according to the deeds on file in the office of the county recorder"].) "The burden is on the adverse claimant of the fee to establish that no taxes were assessed against the land or that if assessed he paid them." (*Gilardi, supra*, 30 Cal.3d at p. 326.) Thus, to meet their burden the Deganns necessarily had to rely on one of the two exceptions to the ordinary rule by establishing an error in the assessment rolls or offering evidence to support the natural inference that their tax assessment was based on the improvements made to the disputed property. (*Id.* at pp. 326–327.) As there was no evidence of any assessment roll error, the Deganns' theory was that they were entitled to a natural inference their tax assessment included the disputed property because they paid taxes on the basis of their purchase price, and their purchase price accounted for the improvements on the disputed property.

11

The trial court accepted their theory. Essentially, it found that the Deganns met their burden to establish the natural inference exception on the basis of evidence showing the disputed property contained significant improvements, Meguerian's testimony that the disputed property had a value of over $100,000, the Deganns' testimony that the improvements on the disputed property were an important part of their decision to purchase the property for $550,000, and Bagano's testimony that a property's purchase price forms the basis for its assessed value for property tax purposes. The trial court found that the Assessor's use of the bargained-for price the Deganns paid, which took into account their visual assessment of the improvements, was the "equivalent functionally to a visual inspection or assessment by the Assessor. In other words, the buyer's eyes reflected in the purchase price, essentially becomes the Assessor's eyes." The trial court concluded: "I think that there is, because of the way that these taxes were assessed, a natural inference, and in my view, a reasonable inference that the taxes paid by the plaintiffs in this case reflected the property based upon the boundary that had been constructed between these two properties."

The court in *Price v. De Reyes, supra*, 161 Cal. 484 first articulated the natural inference concept. There, the adverse claimant and a neighbor agreed to a boundary line between their properties that did not reflect the true description in the deeds, and the claimant constructed improvements along the boundary line which were actually on his neighbor's property. (*Id*. at pp. 487–489.) Although the parties paid taxes according to the legal descriptions of the property, the court relied on the rule that when parties are uncertain of a boundary and agree to its location, that boundary attaches to the deeds so that one in possession of the overlap holds title thereto. (*Id*. at pp. 489–490; see also *Ernie v. Trinity Lutheran Church* (1959) 51 Cal.2d 702, 707 [the agreed boundary doctrine "requires that there be an uncertainty as to the true boundary line, an agreement between the coterminous owners fixing the line, and acceptance and acquiescence in the line so fixed for a period equal to the statute of limitations"].) In light of the boundary agreement, the *Price* court held that the payment of taxes assessed on the basis of the deeds amounted to payment of the taxes on the property actually possessed by the parties

12

based on the agreed boundary line. (*Price v. De Reyes, supra,* at p. 490.) The court then added: "Furthermore, the natural inference would be that the assessor put the value on the land and improvements of each party as disclosed by the visible possession." (*Ibid.*)

Here, there was no evidence to show that the parties satisfied the elements of the agreed boundary doctrine, and hence no evidence to support any natural inference of valuation by the Assessor as the principle was originally conceived. Nonetheless, over time, the natural inference exception has become attenuated from the agreed boundary doctrine. For example, the court in *Raab v. Casper, supra,* 51 Cal.App.3d at page 878, explained the natural inference exception as follows: "[W]here one party is visibly in possession of land under a claim of right and has placed valuable improvements on the land, the natural inference is that the assessor did not base his assessment on the true boundary but valued the land and improvements visibly possessed by the claimants." (See also *Gilardi, supra,* 30 Cal.3d at p. 327 [analyzing application of natural inference exception where no issue as to agreed boundary].)

Consistently, however, the exception has remained an "inference." (*Gilardi, supra,* 30 Cal.3d at p. 327.) As explained in *Aguimatang v. California State Lottery* (1991) 234 Cal.App.3d 769, 800: "'An inference is a deduction of fact that may *logically and reasonably* be drawn from another fact or group of facts found or otherwise established in the action.' (Evid. Code, § 600, subd. (b), italics added.) An inference is more than a surmise or a conjecture. [Citations.] An inference cannot be based on mere possibilities; it must be based on probabilities. [Citations.]" (See also *Estate of Braycovich* (1957) 153 Cal.App.2d 505, 512 [an inference "is a reasonable deduction from the facts proved and, of course, must be logical"].)

Here, there was no evidence from which to infer logically and reasonably that the property tax assessment for the Deganns' property accounted for the disputed property. To Bagano's knowledge, no one from the Assessor's office conducted a visual inspection of the Deganns' property; such an assessment would have been contrary to normal procedure. While Bagano conceded that the Assessor's office typically uses a property's purchase price as the assessed value, he added that "when we do the assessment we

13

generally have a physical description of the property such as the lot size, the size of the improvement, the age of the improvement and that sort of thing. So that physical description is taken into account when we do the assessment." Yet, neither he nor any other witness testified that the physical description of the Deganns' property included the disputed property. (Cf. *Mesnick v. Caton* (1986) 183 Cal.App.3d 1248, 1260 [insufficient evidence of tax payment element of adverse possession where assessor's representative visually inspected property but inspection made no reference to disputed improvements].) We cannot conclude that the mere visibility of the improvements reasonably and logically leads to the inference that the Assessor factored them into the assessment where the evidence establishes that no one from the Assessor's office ever saw them.

In the face of evidence that the Assessor did not conduct a visual inspection, the trial court relied on evidence of the Deganns' visual inspection, concluding it could serve as a proxy for an inspection by the Assessor's office. The trial court applied the natural inference exception on the basis of evidence the Deganns considered the disputed property as part of their $550,000 purchase price, coupled with evidence that the $550,000 amount formed the basis for the property's assessed value. According to this reasoning, one may establish the payment of taxes element of an adverse possession claim by merely asserting his or her subjective belief that a disputed area was acquired at the time of purchase. We cannot conclude that a property owner's opinion as to whether certain improvements were considered in determining the property's purchase price constitutes substantial evidence supporting an inference the Assessor actually considered the visible improvements in assessing the property.

We are guided by *Sorensen v. Costa, supra,* 32 Cal.2d 453. There, the court found the adverse claimant had in fact been paying taxes on the house he occupied, not on the "unimproved land" described in his deed; it relied on evidence of a mistaken description in the tax assessment rolls, which established that the claimant and his predecessors "not only thought that they were paying taxes on the land occupied but in fact paid taxes actually assessed against such lands." (*Id*. at p. 466.) The court elaborated: "There is no question that a person claiming title by adverse possession must show that he and his

14

predecessors actually paid the taxes assessed on the particular land occupied, and he cannot show compliance with section 325 of the Code of Civil Procedure by merely proving that he and his predecessors 'thought or supposed they were paying taxes' on the land occupied by them, when the lands were assessed under a correct description that applied to other land." (*Ibid.*; see *Gilardi, supra,* 30 Cal.3d at p. 327 [no basis for "'natural inference'" that assessment included disputed improvements where the evidence showed parties paid taxes by lot number and there was "no direct evidence" that the improvements were considered as part of the lots' assessment]; see also *Smith v. Byer* (1960) 179 Cal.App.2d 118, 121 ["The word 'assessment' in [§ 325] refers to the act of the assessor"].)

This case is no different than *Dooley's Hardware Mart v. Trigg* (1969) 270 Cal.App.2d 337. There, the defendant acquired a lot and thought the existing block wall, which had been erected by the plaintiff who owned the adjacent lot, marked the boundary between her property and the plaintiff's. She built a driveway abutting and parallel to the block wall before the plaintiff conducted a survey and learned the true boundary line was one foot into the driveway. (*Id.* at p. 339.) Though the court concluded that the defendant had established her entitlement to an easement over the one-foot strip, it further concluded that she could not claim title to the strip by adverse possession because she did not pay taxes on the area during the period of encroachment. (*Id.* at pp. 339, 341.)

Here, similarly, we decline to find a buyer's subjective opinion about the extent of property or improvements acquired amounts to substantial evidence sufficient to support the payment of property taxes element of adverse possession. In the absence of any evidence that the Deganns communicated the intended scope of their acquisition to the Assessor's office, a reasonable and logical inference that the Assessor's office visibly assessed the disputed property and included it as part of its assessment cannot be drawn from the Deganns' inspection and resulting purchase of the property. (See *Aguimatang v. California State Lottery, supra,* 234 Cal.App.3d at p. 800.) Nor do we find that Meguerian's valuation testimony added anything relative to the application of the natural inference exception. Whether the disputed property was worth over $100,000 as stated

15

by Meguerian or $10,000 according to the Deganns did not tend to show how the disputed property had been visibly assessed.

We recognize that the trial court intended to fashion an application of the natural inference exception that took account of both Proposition 13, which mandates that properties are assessed on the basis of their market value at the time of transfer (e.g., *Auerbach v. Assessment Appeals Bd. No. 1* (2006) 39 Cal.4th 153, 157) and the current practice of the Assessor's office to not make visual inspections. Nonetheless, where there is no evidence that the Assessor's office in any way considered or was even aware of the improvements on the disputed property, we cannot conclude that the Deganns' testimony about their property's market value can support a finding that they paid taxes on the property they claim through adverse possession. We do not intend to suggest that, in light of Proposition 13 and the Assessor's office non-inspection practice, adjoining property owners will never be able to establish the requisite payment of taxes where a residence encroaches on a neighbor's land. For example, an adverse claimant may offer evidence that the parties had agreed on a boundary line different from that reflected in the assessment rolls, that at some earlier point in time the Assessor's office conducted a site inspection or that the Assessor's office had some knowledge of the improvements by other means, such as their inclusion in the "physical description" of the property referenced by Bagano. Here, however, there was no such evidence.

Though the result that appellants are entitled to property which the Deganns believed was theirs may seem harsh, the doctrine of adverse possession is not an equitable one, designed to reward the taker or punish the person dispossessed. (*Finley v. Yuba County Water Dist.* (1979) 99 Cal.App.3d 691, 696.) Accordingly, an adverse claimant must strictly comply with the statutory requirements for taking title by this method: "There are no equities in favor of a party seeking by adverse holding to acquire the property of another . . . . 'Section 325 of the Code of Civil Procedure requires that one who seeks or claims to obtain title by adverse possession shall have paid "all the taxes, state, county, or municipal, which have been levied and assessed upon such land during the five years of his adverse occupancy." . . . If the owner of the land pays the

taxes as they fall due, there is no reason why his title should be impaired . . . . The statute makes the payment of taxes as important an element as actual occupancy of the land for the purpose of gaining a title by adverse possession, and the burden is upon the claimant to do the acts required to create the adverse title. He should be as vigilant in paying the taxes as in holding possession of the land. He is seeking to gain the title of another through statutory authority, and it is for him to see that he does all of the acts which the statute requires.'" (*Glowner v. De Alvarez* (1909) 10 Cal.App. 194, 196; accord, *Smith v. Byer, supra,* 179 Cal.App.2d at p. 121.)[2]

Because there was no substantial evidence to support an inference that the Assessor based the property tax assessment on the visible improvements on the disputed property, the Deganns failed to establish the requisite property tax payment element of their adverse possession claim. Consequently, reversal of the judgment with directions to enter judgment in favor of appellants is required. (See *Frank v. County of Los Angeles* (2007) 149 Cal.App.4th 805, 833 [effect of reversal for insufficient evidence].)

       2.     **The Deganns' testimony was insufficient to establish they paid taxes on the disputed property.**

Even if we were to accept the trial court's conclusion that the natural inference exception may be satisfied by the evidence offered here, we would still find that the Deganns failed to establish the payment of taxes element of their adverse possession claim.

Code of Civil Procedure section 325, subdivision (b) sets forth the requirements for one claiming title by adverse possession: "In no case shall adverse possession be considered established under the provision of any section of this code, unless it shall be shown that the land has been occupied and claimed for the period of five years

---

**2**     While it is not the exclusive means by which an adverse claimant may establish the payment of property taxes, Revenue and Taxation Code section 610 provides a specific mechanism for one to assure his or her name is included as an assessee on the assessment roll. (See *Froehlich v. Board of Directors* (1973) 35 Cal.App.3d 98, 103.) There was no evidence that the Deganns availed themselves of this procedure.

continuously, and the party or persons, their predecessors and grantors, have timely paid all state, county, or municipal taxes that have been levied and assessed upon the land for the period of five years during which the land has been occupied and claimed. Payment of those taxes by the party or persons, their predecessors and grantors shall be established by certified records of the county tax collector." While the payment of taxes has long been an element of an adverse possession claim, the statutory requirement regarding proof is more recent; it was enacted at a regular session of the Legislature in 2010 (Stats. 2010, ch. 55, § 1) and became effective on January 1, 2011. (See Cal. Const., art. IV, § 8, subd. (c)(1) [absent urgency clause, a statute enacted at a regular session of the Legislature becomes effective on January 1 of the following year].)

Here, the evidence concerning the payment of taxes was undisputed. Each of the Deganns testified separately that they paid the taxes on their property annually. They further testified that they had requested proof of tax payment from the appropriate office and submitted those documents to their counsel, but their counsel specifically represented that he did not have copies of the Deganns' tax bills in court. Moreover, although the Assessor's office file for the Deganns' property was admitted into evidence, there was no testimony or other indication that the file contained certified copies of their tax payment records. When appellants' counsel raised the issue of this deficiency in proof during his motion for judgment at the conclusion of the Deganns' case, the trial court found it sufficient that the Deganns testified they paid their tax bill on the full assessed value of their home. The trial court stated: "I don't need to have the bill to say I have paid my taxes. I can testify that I paid all of my income taxes since 1942 even though I don't have the bills, can't I?"

The proper interpretation of a statute and its application to undisputed facts present questions of law subject to de novo review. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432; *California Veterinary Medical Assn. v. City of West Hollywood* (2007) 152 Cal.App.4th 536, 546.) The rules governing statutory interpretation are well-settled. Our goal is to ascertain legislative intent, and to do so "we turn first to the words of the statute, giving them their usual and ordinary meaning.

18

[Citations.]" (*Nolan v. City of Anaheim* (2004) 33 Cal.4th 335, 340.) "If the statutory language is unambiguous, 'we presume the Legislature meant what it said, and the plain meaning of the statute governs.' [Citations.]" (*People v. Toney* (2004) 32 Cal.4th 228, 232; see also *Lennane v. Franchise Tax Bd.* (1994) 9 Cal.4th 263, 268 ["'Where the statute is clear, courts will not "interpret away clear language in favor of an ambiguity that does not exist"'"].)

There is no ambiguity in Code of Civil Procedure section 325, subdivision (b). It provides that the payment of taxes for the requisite five-year period "shall be established by certified records of the county tax collector." (Code Civ. Proc., § 325, subd. (b).) It is a well-established rule of statutory construction that the word "shall" connotes mandatory action. (*Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 443; *Puerta v. Torres* (2011) 195 Cal.App.4th 1267, 1272; *In re Marriage of Fossum* (2011) 192 Cal.App.4th 336, 348.) The Deganns did not satisfy this mandatory requirement, as they failed to offer into evidence the tax collector's certified records showing their payment of taxes for the requisite five-year period. The statute itself sets forth the consequence for this failure, which is that adverse possession has not been established. (Code. Civ. Proc., § 325, subd. (b) [providing that "[i]n no case shall adverse possession be considered established" unless the statutory requirements are met].)

Accordingly, the failure to establish the payment of taxes as required by Code of Civil Procedure section 325, subdivision (b) constitutes an alternative basis for reversal of the judgment.

19

## DISPOSITION

The judgment is reversed and the matter is remanded with directions to enter judgment in favor of appellants. Appellants are entitled to their costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J. *

        FERNS

We concur:

_____, Acting P. J.

    ASHMANN-GERST

_____, J.

    CHAVEZ

---

\*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

20